### Jackson & Chadwick v. B. F. Elliott.

1. Jurisdiction—Bankruptcy.—The State courts have jurisdiction, after a bankrupt's discharge, to enforce a vendor's lien upon land sold by the bankrupt before the proceedings in bankruptcy began, and against a purchaser with notice.

2. Lien.—Subsequent purchasers are bound by the recitals in the deeds through which they claim ; and when a deed in a title discloses the existence of purchase-money notes, the subsequent purchasers will be charged with notice of their non-payment.

3. Approved.—Elliott v. Boothe, 44 Tex., 180 ; Peters v. Clements, 46 Tex., 143 : approved.

4. Notice—Lien.—When a vendor reserves in his deed a lien for unpaid purchase-money, the lien is preserved as against a subsequent purchaser, who is charged with notice of the lien, and this without regard to the registry of the deed.

5. D sold to J a tract of land, which J afterwards sold to C. In J's deed, the existence of unpaid purchase-money notes, payable to bearer, was disclosed. Afterwards. in 1866, D began suit against J and C, to recover on the notes and foreclose the lien. During the pendency of this suit, in 1868, J was adjudged a bankrupt, and received his discharge in July, 1869. In December, 1869, the bankruptcy of D was suggested, and a new party (E) was permitted to make himself a party plaintiff in 1871, who claimed the ownership of the notes prior to D's bankruptcy, and that they were not scheduled in D's assets. The assignee of D was afterwards made a party plaintiff. The suit was dismissed as to J on his plea of bankruptcy, and afterwards, in 1872, dismissed entirely, "without prejudice," at plaintiff's costs. In November. 1873, another suit was brought on the notes by E, against J and C, and to subject the land to their payment : Held—

    1. The defense that the notes did not belong to E, but to D's assignee in bankruptcy, cannot avail C, they being payable to bearer, and they not being shown to have been returned as assets of D, and the assignee not being a party to the suit.

    2. The defense of res judicata cannot avail, the former suit having been dismissed as to J on his plea of bankruptcy, and as to C "without prejudice."

Appeal from Washington.   Tried below before the Hon. I. B. McFarland.

On the 24th of October, 1859, the appellant Jackson pur

chased from J. N. Daniels an undivided interest in a tract of land originally granted to James Cochrane, and executed the notes mentioned in Elliott's petition for the purchase-money, which were payable to Daniels or bearer. On the 10th of December, 1862, in a suit pending in the District Court of Austin county, No. 1273, styled J. J. Jackson *v.* W. W. Cochrane *et al.*, the said tract of land was partitioned, and the interest purchased by Jackson (containing 690¼ acres, lying in Washington county) was set apart and title vested in him by a decree of said court, which decree was duly recorded in Washington county. In August, 1863, Jackson, in consideration of 110 bales of cotton, sold said 690¼ acres to his co-defendant, J. N. Chadwick, and executed to him a conveyance with covenants of general warranty. Afterwards, on the 25th of May, 1866, said J. N. Daniels commenced suit in Austin county against said Jackson and Chadwick, to recover the amount due on said notes, and foreclose the vendor's lien on the land; the appellee being plaintiff's attorney in said suit. During the pendency of said suit, the defendant Jackson was, on his own petition, adjudged a bankrupt, his petition having been filed December 30, 1868, and his discharge bearing date July 9, 1869. On the 9th of December, 1869, the bankruptcy of the plaintiff, J. N. Daniels, was also suggested; and, by an order of court, the said B. F. Elliott was given leave to make himself a party plaintiff, which he did by an amended petition, filed May 18, 1871, in which he alleged that said notes had been transferred to him by said Daniels previous to his bankruptcy, and for the purpose of procuring the necessary means and legal assistance to enable him to obtain the benefit of the Bankrupt law; and that, in consequence of said transfer, said notes were not included by said Daniels in his schedule of assets. This amendment admitted the defendant Jackson's bankruptcy, and alleged that the plaintiff had proved up said notes as a claim against his bankrupt estate; but claimed that nothing had been received in satisfaction thereof, and concluded with

a prayer for judgment *pro forma* against Jackson, and for a foreclosure of the vendor's lien on said land.

Subsequently, on the 28th of November, 1871, "L. F. Harris, the assignee of said J. N. Daniels, bankrupt," was, by an order of court, made a party plaintiff; and at the same time, by agreement of parties, suit was dismissed as to J. J. Jackson upon his plea in bankruptcy. On the 23d of July, 1872, the court ordered said suit dismissed, "without prejudice," at plaintiff's cost.

The petition in this case, on the same notes, was filed January 17, 1873. The defendants appeared and answered by general demurrer and denial, and also filed amended answers, setting up Jackson's discharge in bankruptcy, and denying plaintiff's cause of action and right to maintain this suit, for reasons mentioned in said answer, to which was attached and made a part thereof a transcript of all the papers and proceedings had in the suit in Austin county, between the same parties. The defendant Chadwick answered specially, alleging the bankruptcy of Jackson and Daniels, and that the notes sued on were not the property of the plaintiff, but belonged to the creditors of said Daniels, and that they were omitted from his schedule of assets by fraud and collusion between said Daniels and the plaintiff, Elliott. Chadwick also alleged that he was an innocent purchaser for value of said land, and without notice of any lien or incumbrance whatever thereon.

At the February Term, 1874, of the court below, the cause came on for trial, and by consent a jury was waived, and the issues, both of law and fact, were submitted to the court for decision. Judgment was rendered in favor of plaintiff, and the defendants appealed.

The evidence submitted by the plaintiff consisted of—

1. The deed from Daniels to Jackson conveying the land, and reciting the notes sued on, as part of the consideration, to be outstanding and unpaid.

2. The notes themselves, reciting that they were executed in part payment for the land.

3. The decree of partition rendered by the District Court of Austin county, in the matter of J. J. Jackson v. W. W. Cochrane et al., wherein the land was set apart to the defendant Jackson.

4. The deed for the same land from the defendant Jackson to his co-defendant Chadwick.

5. The county maps and abstract of land titles, showing that the James Cochrane "augmentation," of which this land was a part, lies partly in Austin and partly in Washington county.

*Breedlove & Ewing,* for appellant.

I. The record shows conclusively that the plaintiff had no title, either as owner or as trustee; but, on the contrary, that the right of action is in the assignee of the bankrupt estate of J. N. Daniels, for the benefit of his creditors. And such being the case, we insist that the appellee had no right to recover.

II. After the fact that Jackson had been discharged in bankruptcy was brought to the knowledge of the court, could any judgment whatever be rendered against him? We think not. These notes were a part of the indebtedness from which he was relieved, and after the date of his discharge he was no longer responsible in any way, and no judgment could be rendered that would bind him or his property. His indebtedness was cancelled as completely as it could have been by payment, and his discharge when pleaded presented a "full and complete bar to all suits" brought on this or any other claim "which was or might have been proved against his estate in bankruptcy." (Bankrupt Act, sec. 34; Bump, 524.) If this is correct, and the lien is merely an incident to the debt itself, and dependent upon it for its existence, how can it be said that the lien may exist after the maker's liability on the notes is extinguished?

By proving up these notes as an unsecured claim, the appellee has waived his lien, if he ever had any, on the land

in question. (Bankrupt Act, sec. 20; Bump on Bankruptcy, 415–433; Stewart v. Isidor, 1 Bank. Reg., 129; *In re* Ruehle, 2 B. R., 175; Taylor v. Bonnett, 38 Tex., 521; Johnson v. Poag, 39 Tex., 93.)

Whatever may be the rights of Jackson, certainly Chadwick is entitled to be protected, and may justly complain of the foreclosure of this lien on his land.

III. Chadwick was an innocent purchaser.

The evidence on this point is so clear and conclusive that it leaves, we think, no doubt. It establishes every fact which it is necessary to prove to entitle Chadwick to be protected against the lien of these notes. The proof shows that he purchased the land in controversy from Jackson, August 1, 1863, and that he paid therefor, and much more than its present value; that he had no notice, either actual or constructive, of any incumbrance whatever upon the land when he bought and paid for it, and that he purchased in good faith. (Hawley v. Bullock, 29 Tex., 222; Watkins v. Edwards, 23 Tex., 447.)

Jackson showed a title by a judgment of the District Court of Austin county, and there was nothing in that decree to cause Chadwick to suspect that any other person had any rights in, or incumbrances on, said land; nothing to raise a suspicion in his mind that Jackson's title was not a good one. (Weathered v. Boon, 17 Tex., 149; Paschal's Dig., art. 5023; Guilbeau v. Mays, 15 Tex., 410; Wilson v. Williams, 25 Tex., 66.)

*Sayles & Bassett*, for appellee.

I. Was the defendant Jackson's discharge in bankruptcy sufficient to defeat the plaintiff's right?

The Bankrupt law makes no provision for a case like that at bar. The bankrupt's schedule of assets includes only the property owned by him at the time of the filing of his petition; and since, in this case, the bankrupt had conveyed to his co-defendant, Chadwick, and thus divested himself of all

title to the land on which the lien existed, it was not included in his schedule of assets, and the Bankrupt Court, therefore, never acquired jurisdiction over it. (Bankrupt Law, sec. 14, general clauses 46, 52.)

The vendor's lien has always been greatly favored in the courts of Texas. It takes precedence even over the homestead right, otherwise the most sacred subject known to our law. (Shepherd v. White, 10 Tex., 72; Farmer v. Simpson, 6 Tex., 303, and 11 Tex., 354.) Until payment of the purchase-money, the superior right and title to the land remains in the vendor, and title does not fully rest in the vendee until the discharge of the debt. (Id.; Stone v. Darnell, 20 Tex., 14.)

In Monroe v. Buchanan, 27 Tex., 245, the vendor was permitted to follow his lien, a mere verbal one in that case, upon the land, after it had been converted into a homestead, and after the death of the debtor, in a suit brought against his widow and heirs. This case we regard as decisive of the principle involved in this discussion.

In Davenport v. Tilton, 10 Metcalf, 321, the plaintiff having acquired an attachment lien, which, on account of its date, was not affected by the subsequent bankruptcy of the defendant, the defendant relied on his discharge in bankruptcy as a bar to the action; but the court held that the plaintiff was entitled to have a special judgment rendered, which, though in form a judgment in personam, would be in substance and legal effect a judgment in rem, binding the specific property. This was exactly the judgment rendered by the court below.

In Kittredge v. Emerson, 15 N. H., 227, the foregoing case was cited and approved. Still more strongly, if possible, in Buffum v. Seaver, 16 N. H., 160; and to the same effect are many other cases, among them Peck v. Jenness, 7 How., 612; Jones v. Lellyett & Smith, 39 Ga., 64; Franklin Bank v. Batchelder, 23 Me., 60; Wells v. Bunder, 1 S. & M., 348; Ingraham v. Phillips, 1 Day, 117.

II. The alleged adjudication of the same questions in the

---

---

suit in Austin county seems to have been substantially abandoned by the appellants. As the judgment was only a judgment of dismissal, and determined nothing, it will be unnecessary to cite authority to show that the case does not come within the provisions of the rule in regard to *res judicata.* (Haldeman *v.* The United States, 1 Otto, 584.)

III. Nor can the plea of innocent purchaser avail the appellant, Chadwick. The judgment of the court below, on the question of fact, must be regarded as conclusive.

Granting that he paid value for the land, and that he did so without actual knowledge that it was charged with a lien for the unpaid purchase-money, he was still chargeable with constructive notice of it, because the lien was retained in the deed constituting a link in his chain of title. (McAlpine *v.* Burnett, 23 Tex., 650; Irvine *v.* Campbell, 6 Binn., 118; 1 Story's Eq. Jur., sec. 400.)

*P. H. & J. T. Swearengen,* also for appellee.

Roberts, Chief Justice.—That such a judgment *pro forma* against Jackson, the maker of the notes, notwithstanding his bankruptcy, to be satisfied only by sale of the land under the vendor's lien, which land was sold by Jackson to Chadwick with said lien not discharged, can be rendered, was decided by this court in the case of Elliott *v.* Booth, 44 Tex., 180.

Chadwick was chargeable with notice of the lien at the time he purchased the land from Jackson, because the deed from Daniels to Jackson, under and through which he derived his title to the land, exhibited the fact that the notes sued on in this case were given by Jackson to Daniels in the purchase of the land, and constituted the consideration therefor; and of that fact he must be held to have had notice which, if followed up, would have given him full notice of the lien. This was held in the case of Peters *v.* Clements, 46 Tex., 123. The decree of partition between Jackson and Cochrane, the grantee of the land, recorded in Washington county, was not

Jackson's title to the land, further than that it determined his right in severalty to that portion of the Cochrane grant of land, an inspection of which should have induced Chadwick to call for the deed, or other instrument, by which Jackson had acquired the right to obtain a portion of said said grant by a partition of it. Daniels, having taken the precaution to have the evidence of his lien recited in the deed to Jackson, was not bound to see that Jackson recorded the deed, in order to preserve his lien as against a purchaser of the land from Jackson, because it was the duty of the purchaser to call for his title to the land.

The defense that Elliott was not the owner of the notes, but that they belonged to Harris, the assignee of Daniels in bankruptcy, cannot avail Chadwick, because the notes were payable to bearer, and the assignee did not intervene in this suit; nor was he, in any way, made a party to claim any right in the notes; and it was not shown that they were returned to and made a part of Daniels' estate in bankruptcy. The assignee was not in duty bound to appear in this suit, unless he thought it would benefit the estate which he represented. (McHenry *v.* La Société Francaise, Sup. Ct. U. S., 5 Otto, 58.)

The plea of *res judicata* was not sustained by the evidence.

The record of a former suit in Austin county, which was introduced in evidence to sustain this plea, shows that the suit was dismissed as against Jackson upon his plea of bankruptcy coming in, and as to Chadwick, at the next term, without prejudice. This does not establish, either that the matter in controversy was determined by the court so as to conclude the plaintiff, or that he had conclusively surrendered his right of action in the claim sued for. (Haldeman *v.* The United States, 1 Otto, 584.)

There being no error in the judgment, it is affirmed.

AFFIRMED.