## JACOB COOK ET AL. v. W. H. CASWELL ET AL.

### No. 7154.

**1.  Presumption of Survivorship.**—The common law does not under any circumstances, even in the case where two or more perish by the same calamity, indulge in presumptions of survivorship resting upon considerations of age or sex. It was error for the trial court upon testimony that the mother and daughter died the same year to hold that the mother died first.

**2.  Constructive Notice.**—A decree of partition in an estate in administration in Jefferson County was made August, 1867, upon application giving the names of the widow and all the children of the intestate. The decree vested the title of the land in controversy in *the heirs*, not naming them. The decree when recorded in the proper county was notice of the rights of the heirs of the intestate, although not named. It is sufficient to put a purchaser upon inquiry.

**3.  Title and Possession in Trespass to Try Title—Remainder.**—In an action to try title the plaintiff exhibited title to one-fourth of the land sued for, but incumbered with a life-estate in his father to one-third interest. *Held*, that for the part covered by the life-interest the plaintiff could not recover.

APPEAL from Cooke.  Tried below before Hon. D. E. Barrett. The opinion states the case.

*Davis & Harris*, for appellants.—1.   The court erred in finding that Clementine Partridge died before her daughter Laura Caswell, and that W. H. Caswell inherited anything except one-eighth interest in the William McClelland survey from his mother, said Laura Caswell. Hughes v. Lane, 6 Texas, 289; Hall v. Jackson, 3 Texas, 308; 2 Greenl. on Ev., secs. 309, 354; 1 Greenl. on Ev., secs. 29, 30; Wood's Prac. Ev., 186.

2.   The court erred in finding that R. H. Love had constructive notice of the claim of W. H. Caswell to the William McClelland survey, and in not holding that said Love and those under whom he claims were protected against said claim as bona fide purchasers.   Wimberly v. Pabst, 55 Texas, 589; Hill v. Moore, 62 Texas, 610; Edwards v. Brown, 68 Texas, 329; McAlpine v. Burnett, 23 Texas, 649; Judson v. Corcoran, 17 How., 612; Lea v. Polk, 21 Howard, 493; 1 Pome. Eq. Jur., sec. 417.

3.   The court erred in valuing the remainder in W. H. Caswell to take effect upon the death of his father J. M. Caswell, and the improvements thereon, because none but a prophet can say what said land and improvements will be worth upon the death of said J. M. Caswell.

*Mathis & Lewis*, for appellees.—A purchaser is charged with constructive notice of everything material in the instruments which form the direct chain through which his title is deduced, and if any of these conveyances contain a recital of or reference to another deed collateral and not a part of the direct series, he would by means of such recital

or reference have notice of this collateral instrument, of all its contents, and of all the facts indicated by it which might be ascertained through an inquiry prosecuted with reasonable diligence. 2 Pome. Eq. Jur., secs. 608, 626, 629; Bryan v. Crump, 55 Texas, 1; Peters v. Clement, 46 Texas, 114.

TARLTON, JUDGE, *Section B.*—This was an action of trespass to try title, brought in the District Court of Cooke County, October 1, 1887, by W. H. Caswell, a minor, suing by his father and next friend J. M. Caswell, against Jacob Cook, Asa Bozarth, Belle Bozarth, C. Parsons, and Margaret Gilliland, to recover an undivided one-fourth of a survey of 320 acres in said county in the name of Wm. McClelland. The plaintiff claimed to own absolutely two-thirds of the one-fourth and a remainder in the other third, to take effect upon the death of his father, J. M. Caswell, who owned a life-estate therein. The petition alleged that plaintiff W. H. Caswell inherited the premises from his mother, Laura Caswell, who died leaving surviving her, her son, the said W. H. Caswell, and husband J. M. Caswell. The defendant Cook disclaimed as to all of the survey except as to a particular 240 acres, and the defendants Parsons and Gilliland to all of the survey except as to a particular 40 acres; and as to the land claimed by them, these three defendants pleaded not guilty and limitation of three and five years and possession in good faith with improvements. J. M. Caswell intervened on December 13, 1887, claiming a life-estate in one-third of the one-fourth interest sued for. The plaintiffs and the defendants Bozarth compromised as to the other 40 acres, and an agreed judgment was rendered as between them, and that portion of the case severed from the case as to the other defendants. The cause was tried before the court, June 28, 1889, and resulted in a judgment for the defendants against J. M. Caswell as to his life-estate, it being barred by limitation, but a judgment in favor of the plaintiff W. H. Caswell for 46⅔ acres, or one-sixth of the land, valuing the land at $10 per acre and the improvements at $234.17, and directing a writ of possession to issue, provided the plaintiff should within twelve months pay into court the value of said improvements. As to the remainder, to take effect upon the death of J. M. Caswell being one-twelfth, the judgment valued it at $10 per acre and improvements thereon at $117, and directed that upon the death of J. M. Caswell a writ of possession should issue in favor of W. H. Caswell, provided that he should within twelve months after such death pay into court the value of said improvements, and in case of his failure so to do, the defendants could within six months thereafter pay $10 per acre for said land. Though there was neither pleading nor proof, the court gave the defendants judgment against W. H. Caswell for $234, and directed that execution should issue, and upon the death of J. M. Caswell another execution was directed to issue

against W. H. Caswell for an additional $117. From this judgment, but not from that part of it awarding them execution as aforesaid, the defendants Cook, Parsons, and Gilliland prosecute this appeal.

The conclusions of law and of fact found by the court are as follows:

"1. As matters of fact, I find that the land in controversy was patented to Wm. McClelland in 1856, by virtue of bounty warrant No. 1215, issued by the Secretary of War on the 12th day of December, 1837, and by a regular chain of transfer from Wm. McClelland through several successive owners said certificate was transferred to Worthy Partridge, the transfer to Worthy Partridge being dated September 19, 1854.

"2. Worthy Partridge was a married man at the date of the transfer of said certificate to him, his wife being Clementine Partridge. Worthy and Clementine Partridge had five children, viz., Rosalia L., Laura Ann, Mary Emma, Cyrus H., and Worthy Partridge. Worthy Partridge, Sr., died about the year 1856, leaving his wife Clementine and all the above children surviving him.

"3. That on February 14, 1867, said Clementine and all of said children living in Jefferson County, Texas, where they had lived since long before the death of their husband and father, the said Clementine Partridge made application to the County Court of Jefferson County for partition of the community property of herself and her deceased husband between herself and children of herself and deceased husband, to-wit, the said Rosalia L., Laura Ann, Emma, Cyrus H., and Worthy W. Partridge. Her application gave the names of each of the said children and their place of residence.

"4. That on the 20th day of August, 1867, in the County Court of Jefferson County, in pursuance to the above application, the community estate of Worthy Partridge and his surviving wife Clementine was legally partitioned between said Clementine and the heirs of herself and said Worthy Partridge. Said decree of partition vests the title to the land in controversy in said heirs, but it does not give the names of the heirs. A certified copy of said decree of partition was duly recorded in Cooke County in 1873, in the deed records of said county.

"5. That on the 20th day of August, 1867, in the Probate Court of Jefferson County, Texas, a decree of partition was duly recorded dividing among the heirs of said Worthy and Clementine Partridge the lands set apart to said heirs by the aforesaid decree of partition. Said decree of partition showed the names of said heirs as follows, viz., Rosalia L. Leonard, wife of R. H. Leonard, Laura A. Caswell, wife of J. M. Caswell, Emma Partridge, C. H. Partridge, and Worthy W. Partridge, and by said decree of partition the 320 acres in controversy was set apart to the heirs of Worthy W. Partridge. Said decree of partition was never filed for record nor recorded in Cooke County.

"6. That in the month of April, 1870, the said Worthy W. Partridge died in his minority, without issue, having never been married,

and that on the 25th day of June, 1870, the said Laura Ann Caswell, wife of J. M. Caswell, died, leaving surviving her, her husband J. M. Caswell and infant son W. H. Caswell, the plaintiff herein, and who is still a minor, and that some time in the year 1870, after the death of Worthy W. Partridge, the said Clementine Partridge died, and that in the year 1886 the said Cyrus H. Partridge was killed.

"7. That on the second day of January, 1873, Emma H. Partridge, Cyrus H. Partridge, and Rosalia L. Leonard executed a deed to Robert H. Leonard, the husband of said Rosalia L. Leonard, to the land in controversy, which deed was registered in Cooke County, Texas, on the 2d day of May, 1873, and in said deed it was recited that the grantors therein were the only heirs at law of the said Worthy Partridge, Sr.

"8. That on the 12th day of July, 1873, R. H. Leonard and wife Rosalia L. Leonard deeded to J. M. Lindsay the land in controversy, which deed was duly registered in Cooke County, Texas, on the 7th day of August, 1873.

"9. That on September 3, 1874, J. M. Lindsay instituted suit in the District Court of Cooke County against the unknown heirs of Wm. Mc-Clelland, citing them by publication to remove the cloud cast upon his title to said land by reason of the patent thereto being in the name of Wm. McClelland, and at the October term, 1875, of said court he recovered a judgment purporting to divest the title to said land out of the heirs of said Wm. McClelland, and vesting it in said Lindsay, and a certified copy of this judgment was duly registered in the deed records of Cooke County on the 25th day of November, 1875.

"10. That on the 25th day of February, 1879, J. M. Lindsay conveyed by deed to W. O. Davis the tract of land in controversy, which deed was duly registered on the same day in the deed records of Cooke County.

"11. That by deed dated December 19, 1879, and duly registered in Cooke County on December 29, 1879, W. O. Davis conveyed the east half of said land to R. H. Love, and by deed dated February 15, 1882, and duly registered on the same day, he conveyed the west half of said land to said Love.

"12. The defendants claim under deeds duly executed by R. H. Love and wife, but never registered, and said Love and defendants have been in possession of the premises ever since the date of the purchase by R. H. Love from W. O. Davis.

"13. I find that the defendants are possessors in good faith, and that the defendant Cook has made permanent improvements to the amount of $1155, and the defendants Gilliland and Parsons of the value of $250; that the use and occupation of the premises exclusive of the improvements made by the defendants was of no value, and that the value of the premises without the improvements is $10 per acre.

"14.   I find that plaintiff W. H. Caswell is entitled to recover at this time an undivided one-sixth of the land sued for, estimated to be worth $466.66⅔, and that upon the death of his father, the said J. M. Caswell, he will be entitled to an additional interest of one-twelfth of the land, of the estimated value of $233.33⅓. That W. H. Caswell inherited the land from his mother Laura Ann Caswell, and that the undivided one-twelfth to which he will be entitled upon the death of J. M. Caswell is the life-estate of J. M. Caswell in the interest of plaintiff's mother Laura Ann Caswell.   That upon the death of Worthy W. Partridge plaintiff's mother inherited one-fourth of half the land in controversy; and as the evidence shows that plaintiff's mother Laura Ann Partridge and his grandmother Clementine Partridge both died in the same year, 1870, but not showing which of them died first, as Clementine was the older I assume that she died first, and that her daughter Laura Ann inherited one-fourth of her half, which, together with the one-fourth of the half she inherited from Worthy W. Partridge, upon her death descended to plaintiff W. H. Caswell subject to the life-estate of his father J. M. Caswell.

"15.   The evidence does not disclose how much other property, if any, Worthy W. Partridge owned at the time of his death in April, 1870.

"16.   When R. H. Love bought the land in controversy from W. O. Davis he had no actual knowledge of plaintiff's claim to the same, but he had constructive notice thereof.   The decree of partition between Clementine Partridge and the heirs of Worthy Partridge rendered in the Probate Court of Jefferson County, on the 20th day of August, 1867, by which the land in controversy was decreed to the heirs of Worthy Partridge, constituted a link in Love's title, and a certified copy of said decree being of record in Cooke County, said decree put him upon notice of facts that would have disclosed to him plaintiff's interest in the land had he prosecuted due inquiry.   And the same is true as to the defendants and W. O. Davis, through whom they and Love claim.

"As a matter of law, I find that as plaintiff was the equitable owner of one-fourth the land in controversy, subject to the life-estate of J. M. Caswell in one-third thereof, and as the defendants had constructive notice thereof, they can not be innocent purchasers of plaintiff's interest; but as they have had adverse possession of the lands for a sufficient length of time to bar the said J. M. Caswell of the recovery of his life-estate therein, I render judgment for plaintiff for one-sixth of said land to be recovered at once, and for one-twelfth thereof to be recovered upon the death of said J. M. Caswell."

Appellants' first assignment of error is as follows: "The court erred in finding that Clementine Partridge died before her daughter Laura Caswell, and that W. H. Caswell inherited anything except a one-eighth

interest in the Wm. McClelland survey from his mother, said Laura Caswell.''

This assignment is founded upon the assumption by the court, set out in its fifteenth conclusion, that, because she was the older, Clementine Partridge died before her daughter Laura; it appearing that both of them died in the year 1870, but without evidence of the precise date of Clementine's death. This assumption was certainly unwarranted. The common law does not, under any circumstances, even in the case where two or more perish by the same calamity, as by a battle, wreck, or conflagration, indulge in presumptions of survivorship resting upon considerations of age or sex. Woods' Prac. Ev., sec. 64. In this case, however, the error we think is harmless. The mother of W. H. Caswell was in any event the medium of his inheritance—direct, if she survived Clementine; indirect, if Clementine survived her. The interest in the land (one-fourth) was the same, whatever the order of the deaths. The allegation in appellee's petition, "that he inherited the land from his mother," is substantially established by evidence that, as an heir of his mother, the land descended to him from his grandmother.

In their second assignment of error appellants urge that the court erred in finding that R. H. Love had constructive notice of plaintiff's claim, and in not holding that Love and those under whom he claims were innocent purchasers. In this we do not agree with appellants.

At the time of the purchase by Love there was on record in Cooke County the decree of partition, dated February 14, 1867, clearly indicating that the property was formerly of the community of Worthy Partridge and his wife Clementine. This decree was seen at the time of his purchase and inspected by Lindsay, through whom Love claimed. It was accepted by Lindsay evidently as a link in his chain of title, and was by him caused to be recorded. It recited that the survey in question had been set aside to the heirs of Worthy Partridge. It suggested, as a matter of prudence, inquiry as to who these heirs were, and had such inquiry been prosecuted by Lindsay, or by any of the subsequent vendees, it would have resulted in ascertaining the names of the heirs through the application on which the decree rested, and the fact that appellee's mother was one of them. Appellants and those under whom they claim were therefore charged with notice of the decree referred to, as a link in their chain of title, and with the further notice of appellee's claim through his mother Laura A. Caswell, an heir of Worthy Partridge, Sr. Pom. Eq. Jur., secs. 608, 626, 629; Jackson v. Elliott, 49 Texas, 69; Gaston & Thomas v. Dashiell, 55 Texas, 517. And if appellants and those under whom they claim be not chargeable with notice of the decree of August 20, 1867, which was never recorded in Cooke County, and by which the survey was set aside to Worthy Partridge, Jr., the court was nevertheless correct in adjudg-

ing plaintiff entitled to one-fourth of the survey, subject to the life-estate of his father. On the death without issue of Worthy Partridge, Jr., his interest would have descended, one-half to his surviving mother Clementine and the remainder to his three sisters and his brother Cyrus; and on the death of the mother Clementine her interest would have descended, share and share alike, to her four children or their representatives. The plaintiff, as the only child of Laura Caswell, formerly Laura Partridge, would have inherited her one-fourth interest, subject to his father's life-estate.

The cases cited by appellants in support of this assignment, Wimberly v. Pabst, 55 Texas, 589; Hill v. Moore, 62 Texas, 610; Edwards v. Brown, 68 Texas, 329; McAlpine v. Burnett, 23 Texas, 649, are clearly distinguishable from the present case. Each of them imports, on the part of the purchaser, absence of notice of the prior equity sought therein to be asserted.

Of the remaining assignments of error we deem it only necessary to consider the following: "The court erred in rendering any judgment in respect to the remainder in W. H. Caswell depending upon the life-estate of his father J. M. Caswell, because such remainder is not such title as enables said W. H. Caswell to maintain an action of trespass to try title."

A plaintiff in an action of trespass to try title must show that he has a possessory title to the land at the time of the demise laid in the petition. 2 Green. Ev., secs. 303, 304. This the plaintiff failed to do as to so much of the land as is represented by the life-estate of his father J. M. Caswell. The court found that to this life-estate defendants are entitled by virtue of their plea of limitation. We are not at liberty to pass upon the accuracy of this finding in the absence of a cross-assignment by the plaintiff or the intervenor.

We therefore conclude that, as to the 46⅔ acres, or one-sixth of the land, and the improvements thereon and their value, etc., the judgment of the lower court should in all things be affirmed; but that as to the one-twelfth of the land, or the life-estate of J. M. Caswell, it should be reversed; that judgment be here entered in accordance herewith, *without prejudice, however*, to the right of the appellee W. H. Caswell to sue for said one-twelfth on the death of his father J. M. Caswell. J. M. Caswell as next friend of W. H. Caswell, and the sureties on his cost bond, if any, should pay the costs of this appeal, and appellants should pay all costs of the court below.

*Reversed and reformed.*

Adopted October 20, 1891.