### LETTIE HUGHES ET AL. v. BENSON LANDRUM.

#### Decided June 24, 1905.

**1.—Estoppel—Representations by Widow—Title to Land.**

Where plaintiff, a widow, agreed to release certain land to one G. if he would pay off an indebtedness due thereon, and also stated to defendant that she intended to abandon the property and would not pay the indebtedness, and that if he wished to purchase it he would have to do so from G., and defendant, relying on such representation, bought the land from G., who had paid off the indebtedness as agreed, plaintiff was estopped to claim any further interest in the land.

**2.—Same—Community Property and Debts.**

The land being community property of plaintiff and her deceased husband, she was authorized to contract for its sale in consideration of the payment of a community debt due thereon, and her act in so doing was binding upon her children as well.

**3.—Judgment—Presumptions on Appeal—Findings.**

A judgment rendered upon special issues submitted to the jury imports such further findings of fact as are necessary to support it, provided there is evidence in the record sufficient to authorize such findings.

Appeal from the District Court of Clay. Tried below before Hon. A. H. Carrigan.

*W. G. Eustis* and *Stewart & Templeton,* for appellants.—The findings of the jury are wholly insufficient to divest plaintiffs of their title to

said property or to estop them from asserting title thereto; defendant having failed to show himself entitled to the equitable relief he prayed for. Ann Berta Lodge v. Leverton, 42 Texas, 25; Jones v. Carver, 59 Texas, 296; Eason v. Eason, 61 Texas, 225; Wooldridge v. Hancock, 70 Texas, 22, and cases there cited; Galveston, H. & S. A. Ry. Co. v. Botts, 55 S. W. Rep., 515.

*Jas. A. Graham,* for appellee.—1. Mrs. Lettie Hughes made the oral contract with P. D. Grant for the sale of the land and delivered the land to P. D. Grant in pursuance of said contract, and as said Grant has carried out the terms of said contract, and appellee, relying upon said contract, purchased said land and paid full value therefor and has kept all taxes paid thereon and has placed improvements thereon at a time when the evidence shows that the land had gotten to be worth even less than when he purchased same, it would be a fraud upon his rights for appellants to now be permitted to claim the land and recover same. Herman v. Geiseke, 33 S. W. Rep., 1006; Walsh v. Ford, 66 S. W. Rep., 854; Banks v. McQuatters, 57 S. W. Rep., 334; Thompson v. Robinson, 54 S. W. Rep., 243; Curran v. Texas Land & Mortgage Co., 60 S. W. Rep., 466; Dugan's Heirs v. Colville's Heirs, 8 Texas, 125; Neathery v. Ripley, 21 Texas, 434; Sanger Bros. v. Heirs of Moody, 60 Texas, 96.

2. The indebtedness against the land was a community debt of Mrs. Hughes and her deceased husband, and such interest as they had in the land was a community interest of herself and her deceased husband; and under the well-settled rules of law in this State the survivor in community can dispose of community property, even though it be the homestead, for the purpose of paying community debts, and without any administration or other legal proceedings, and such disposition on the part of the survivor will pass the interest of the community, including the surviving children, in said property, whether they be minors or adults; and whatever the survivor can do by written conveyance duly executed she may also do through equitable estoppel. Corzine v. Williams, 22 S. W. Rep., 399; Sanger Bros. v. Heirs of Moody, 60 Texas, 96; Walker v. Ambercombie, 61 Texas, 69; Ashe v. Youngst, 65 Texas, 631.

SPEER, ASSOCIATE JUSTICE.—This is an ordinary action of trespass to try title instituted by appellants, Lettie Hughes and her children, to recover 280 acres of land from the appellee, Benson Landrum. The appellee answered by demurrers, both general and special, pleas of not guilty, equities entitling him to a specific performance of a parol agreement to convey, estoppel, and others. The case was submitted to a jury on the following special issues:

"(1) State whether or not the plaintiff, Mrs. Lettie Hughes, in the presence and hearing of defendant Benson Landrum, agreed with one P. D. Grant, after the death of her husband, E. C. Hughes, to surrender the land in controversy to said P. D. Grant, and said Grant agreed to pay off and release Mrs. Lettie Hughes from the payment of the indebtedness on the lands in issue herein? (2) If you answer the first question 'Yes,' then state whether or not Mrs. Lettie Hughes sur-

rendered the said property in issue to said P. D. Grant? (3) If you answer the question No. 1 'Yes,' then state whether or not P. D. Grant paid off the indebtedness on the land in controversy, and discharged Mrs. Hughes and the estate of her husband from the payment of the indebtedness due on the land in controversy? (4) State whether or not Mrs. Lettie Hughes abandoned the property in controversy, with no intention of paying off and discharging the indebtedness then against the land in issue, and under circumstances which would warrant an ordinarily prudent person, situated as was said P. D. Grant, in believing and concluding, that said Lettie Hughes intended for him, the said P. D. Grant, to take the land in issue and pay off the then outstanding indebtedness against it? (5) State what caused the plaintiff to assert title to the land in issue herein at this time? (6) State whether or not the plaintiff, Mrs. Lettie Hughes, repudiated the indebtedness on the land at the time she left it? If so, when did this occur? (7) State whether or not Mrs. Lettie Hughes, after the death of her husband, E. C. Hughes, represented to Benson Landrum that she intended to abandon the property in controversy and would not pay off the indebtedness then existing against the same, and that if said Landrum desired to purchase said land he would have to do so from P. D. Grant? (8) If you answer No. 7 'Yes,' then state whether or not Benson Landrum thereafter, relying on said representations and believing them to be true, purchased said land from said P. D. Grant and paid him therefor, and would not have done so but for said representations of Mrs. Lettie Hughes."

To these issues the jury responded as follows: "We, the jury, answer the questions propounded to us by the court as follows: Answer No. 1, 'Yes;' Answer No. 2, 'Yes;' Answer No. 3, 'Yes;' Answer No. 4, 'Yes;' Answer No. 5, 'On account of the enhancement of valuations on said land by the discovery of oil near the said land;' Answer No. 6, 'She did in the fall of 1895;' Answer No. 7, 'Yes;' Answer No. 8, 'Yes.'"

No other issues were submitted to the jury, and no complaint is made of the refusal to submit other issues. Upon this verdict the court rendered judgment in favor of the appellee.

By appropriate assignments the submission of each of these issues is attacked for various reasons, none of which we think is tenable. The facts sought to be elicited by these interrogatories could probably have been ascertained upon questions dealing less with the evidentiary matters, yet, framed as the questions are, they elicit facts sufficient, we think, to authorize the judgment rendered. Neither can we say that the issues submitted are immaterial. An examination of the record also convinces us that the answers find sufficient support in the testimony. The judgment of the court imports such further findings of fact as are necessary to support it; provided, of course, there is evidence sufficient in the record to authorize such findings. We therefore think the judgment is amply supported, both upon the issues of estoppel by her representations, and equities requiring the specific performance of Mrs. Hughes' parol agreement to convey to Landrum's grantor, P. D. Grant. The property being the community property of Mrs. Hughes and her deceased husband, she was authorized to contract for its sale to Grant in consideration of his paying the community debts, and her conduct

in this respect would be binding, not alone upon herself, but upon her children as well.

The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.