Jim Ed **FERGUSON** et al., Appellants,

v.

Louis T. **JOHNSTON** et al., Appellees.

No. 7070.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 13, 1959.

Rehearing Denied Feb. 10, 1959.

B. F. Edwards, Clarksville, for appellants.

Pat Beadle, Robert Gooding, Clarksville, for appellees.

FANNING, Justice.

This is a trespass to try title suit and the judgment of the trial court is affirmed.

Appellees sued in trespass to try title for 29.99 acres of land in Red River County, Texas, which was a part of a 200-acre tract conveyed by J. H. Johnston, Sr. (a widower), to his son, Louis T. Johnston, Sr., for his life (with grantor having rights of revocation of said life estate contingent upon breach of the grantee of certain conditions as particularly specified in said deed) with remainder to grantee's children, or their descendants, surviving him at the time of his death, by deed dated March 19, 1918. Appellees Louis T. Johnston, Virginia Gordon Lovett, and Barbara June Simonds are the surviving children and only children of Louis T. Johnston, Sr., who died August 9, 1953. Appellees Robert Gooding and Pat Beadle hold certain interests in the land by deeds from other appellees.

Pertinent provisions of the 1918 deed from J. H. Johnston, Sr., to Louis T. Johnston, Sr., are found below.[1]

1. "The State of Texas⎤ Know All Men By
County of Lamar ⎦ These Presents:
"That I, J. H. Johnston, of the state and county aforesaid, for and in consideration of the natural love and affection which I have and bear for my son, Louis T. Johnston and in order to provide a support for him during his life, and for the further consideration that I desire to provide a fund for my partial support during the remainder of my life, have this day given granted, and conveyed and do hereby give grant, and convey unto him, the said Louis T. Johnston subject however, to the uses trusts and conditions subsequent to be performed by him and to my right of forfeiture for breach thereof hereinafter fully set out for and during the term of his life, with remainder in fee simple after his death to his children then living in equal undivided interests or the descendants of such children of his as may then be dead leaving descendants and in default of any descendants of his surviving him, then to J. H. Johnston, Jr. Bessie E. Ferguson and Sue Mildred Johnston, in equal undivided interests, or the descendants of such of them as may then be dead (such descendants to take per stirpes) provided that if either J. H. Johnston Jr. Bessie E. Ferguson or Sue Mildred Johnston shall then be dead leaving no descendants, then the estate in remainder herein provided for him or her, shall vest in the survivor, or survivors of them or the descendants of such survivors (such descendants to take per stirpes), reserving to myself forever, for the remainder of my life, all the right, title and claim to all of the minerals contained in the soil thereof, and also reserving to myself the right of forfeiture of said life estate for the term of my life, as is hereinafter fully set out, the following described tract or parcel of land, situated in Red River County, Texas, to-wit:" (Here follows description of 200 acres.)
"To have and to hold the premises above described unto him, the said Louis T. Johnston for and during his life, reserving to myself, however, all right, title and claim to all the minerals contained in the soil thereof for and during the remainder of my life, and reserving also to myself the right of forfeiture of said life estate for the term of my life, as hereinafter fully set out, with remainder at the death of said Louis T. Johnston in fee simple, to his children then living in equal undivided interests, or to descendants of such children of his as may then be dead leaving descendants (such descendants to take per stirpes) and in default of any descendants of said Louis T. Johnston surviving him, then to J. H. Johnston, Jr., Bessie E. Ferguson and Sue Mildred Johnston in equal undivided interests, or the descendants of such of them as may then be dead leaving descendants (such descendants to take per stirpes) provided, that if either said J. H. Johnston, Jr., Bessie E. Fergson or Sue Mildred Johnston, shall then be dead leaving no descendants then the estate in remainder herein provided for him,

J. H. Johnston, Sr., died on or about February 19, 1920, without ever having revoked or having attempted to revoke the life estate granted to Louis T. Johnston, Sr., in the 1918 deed.

In 1918 at the time of the execution and delivery of the above deed, the grantee of the life estate, Louis T. Johnston, Sr., was married, his wife being Eula Johnston, which was his only marriage, and they had no children until July 13, 1920, when Louis T. Johnston, Jr., one of the appellees herein, was born. Said Louis T. Johnston, Jr., became 21 years of age on July 12, 1941. Louis T. Johnston, Sr., and wife, Eula Johnston, had two more children born to their union as follows: Virginia Gordon Lovett was born March 19, 1924, and became 21 years of age on March 18, 1945. Barbara June Simonds was born September 16, 1931, and became 21 years of age on September 15, 1952. (The record also shows the dates of the military services of certain appellees in the Armed Forces of the United States, but in view of our decision on the controlling issue in this case, it will not be necessary for us to further note appellees' counter-contentions with respect to these matters.)

At the time of the execution and delivery of the 1918 deed, the other remaindermen

mentioned in such deed, namely, J. H. Johnston, Jr., Bessie E. Ferguson and Sue Mildred Johnston, children of J. H. Johnston, Sr., and brother and sisters of Louis T. Johnston, Sr., were living; and, at such time also, Bessie E. Ferguson had two children, Jim Ed Ferguson and Elizabeth Ferguson Pool, two of the appellants herein.

The appellants are the sole surviving children of Bessie E. Ferguson, deceased, who died in the year 1933, and who, under the terms of the deed, succeeded to the remainder interest of their mother in and to the land in controversy upon her death.

By deed, dated the same day as the deed to Louis T. Johnston, Sr., J. H. Johnston, Sr., conveyed 200 acres of land, adjoining the West Boundary line of the 200 acres conveyed to Louis T. Johnston, Sr., for his life, to Bessie E. Ferguson for her life; said deed containing identical provisions to those in the deed to Louis T. Johnston, Sr., except for changes in the remaindermen made necessary by reason of there being a different grantee. The description of the land in the deed to Mrs. Ferguson fixes her Northeast corner and the Northwest corner of the 200 acres "this day" conveyed to Louis T. Johnston, Sr., for his lifetime, and her East Boundary line as the West Boundary line of that tract.

or her shall vest in the survivor or survivors of the, or the descendants of such survivors, (such descendants to take per stirpes), and to the heirs, assigns and legal representatives of such remainder as shall take the fee simple title to the said premises forever.

"This conveyance of said life estate above mentioned is made, however, upon the uses, trusts and conditions subsequent to be performed by the said Louis T. Johnston, and subject to the right of forfeiture of the same following to-wit:

"First: Said life tenant shall pay all taxes on said land accrued during his tenancy of the same and preserve the same from waste;

"Second: He shall annually on the first day of January of each year after the date hereof pay to me, or my order, the sum of five hundred dollars, as long as I shall live for my support; and in

event of failure to so pay said sum of money on the dates above mentioned then I shall have the right by an instrument, of writing duly acknowledged and recorded by me as required by the statutes of Texas, to forfeit the estate hereinbefore granted for the life of said Louis T. Johnston, but the estate in fee and remainder hereinabove granted shall nevertheless vest as hereinabove provided, and, in event I shall so forfeit said life estate, I shall be entitled to re-possess and re-enter said premises and hold the same during the remainder of my life, but if I should thereafter die before the said Louis T. Johnston then said life estate shall re-vest in him.

"Witness my hand this 19th day of March 1918.

/s/ J. H. Johnston."

The land in controversy is admittedly a part of the 200 acres described in the 1918 deed to Louis T. Johnston, Sr. Appellees proved good record title to the 29.99-acre tract .in controversy.

Appellants' claim of title is based upon adverse possession under the ten year statute of limitation (Articles 5510 and 5514, Vernon's Rev.Ann.Civ.St.) with their first claim of adverse possession beginning in the year 1926, when acts of cultivation, use or enjoyment of the premises were first shown, and continuing to 1935, when the tract was first fenced, with continued cultivation, use or enjoyment of the tract continuing on to the time of the filing of the suit in 1956.

It is also particularly noted here that the life estate was created in 1918 and about eight years prior to appellants' first claimed possession of the land which began in 1926.

Appellees as plaintiffs filed this suit on July 12, 1956.

As above stated, Louis T. Johnston, Sr., the life tenant of the land in controversy died August 9, 1953. It is clear that under the deed in question appellees had no possessory interests in the tract in question until the death of the life tenant in 1953.

In a trial before the court, without the aid of a jury, judgment was rendered for plaintiffs for the title and possession of the tract sued for, and defendants have appealed.

This cause can be decided, and is decided, on one controlling matter. We hold that under the facts in this case limitation did not begin to run against appellees as remaindermen until the death of the life tenant in the year 1953. See the following authorities: Cook v. Caswell, 81 Tex. 678, 17 S.W. 385, 387; Hensley v. Conway, Tex.Civ.App., 29 S.W.2d 416, 418; Evans v. Graves, Tex.Civ.App., 166 S.W.2d 955, wr. ref., n. r. e.; Baylor Law Review, Vol. IX, No. 2, pp. 168–194. Since the suit was filed in 1956, obviously the statute had not run for the ten year statutory period.

Among the cases relied upon by appellants are the following: McConnico v. Thompson, 19 Tex.Civ.App. 539, 47 S.W. 537, wr. ref.; Elcan v. Childress, 40 Tex. Civ.App. 193, 89 S.W. 84, wr. ref.; and Howth v. Farrar, 5 Cir., 94 F.2d 654.

In Hensley v. Conway, supra (29 S.W.2d 416, 417) it is stated:

"We have reached the conclusion that this interest was not barred. The statutes of limitation as to an interest in land, which one owns as a remainderman, subject to a life estate in another, do not begin to run in favor of one in possession until the death of the life tenant. Gibbs v. Barkley, Tex. Com.App., 242 S.W. 462; Millican v. McNeill, 102 Tex. 189, 114 S.W. 106, 21 L.R.A.,N.S., 60, 132 Am.St.Rep. 863, 20 Ann.Cas. 74; Cole v. Grigsby, Tex. Civ.App., 35 S.W. 680; Id., 89 Tex. 223, 35 S.W. 792; Cook v. Caswell, 81 Tex. 678, 17 S.W. 385, 387; Willis v. Fiveash, Tex.Civ.App., 297 S.W. 509; Beaty v. Clymer, 32 Tex.Civ.App. 322, 75 S.W. 540; Phillips v. Palmer, 56 Tex.Civ.App. 91, 120 S.W. 911; Schnabel v. McNeill, Tex.Civ.App., 110 S.W. 558; Meurin v. Kopplin, Tex. Civ.App., 100 S.W. 984; Caffey's Ex'rs v. Cooksey, 19 Tex.Civ.App. 145, 47 S.W. 65; Kesterson v. Bailey, 35 Tex.Civ.App. 235, 80 S.W. 97; Govan v. Bynum, 17 Tex.Civ.App. 180, 43 S.W. 319; Morris v. Eddins, 18 Tex. Civ.App. 38, 44 S.W. 203; Haby v. Fuos, Tex.Civ.App., 25 S.W. 1121.

"In Olsen v. Grelle, Tex.Com.App., 228 S.W. 927, a case where the question of limitation arose as to the possession of defendants who were not strangers to the life estate, the statement of the rule as declared in the above authorities was narrowed so as not to include strangers. This we think cannot be regarded as a holding that limitation would run in favor of strangers in possession. The statement was made, no doubt, in deference to the decisions in McConnico v.

Thompson, 19 Tex.Civ.App. 539, 47 S.W. 537, and Elcan v. Childress, 40 Tex.Civ.App. 193, 89 S.W. 84, which do seem to so hold, and for the purpose of forestalling without discussion any contention that there was a conflict with said decisions. At any rate, there was no occasion presented for determining whether a different rule would apply to strangers. The cases of McConnico v. Thompson, supra, and Elcan v. Childress, supra, suggest two questions arising upon this record: (1) Do they correctly declare an exception to the general rule? and (2) Are the plaintiffs in this case and those under whom they claim, properly to be regarded as trespassers or strangers to the defendants' said title. These two questions we will consider in inverse order.

\* \* \* \* \* \*

"Limitation does not begin to run as against a cause of action until such cause of action accrues. 'The accrual of the cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued and the statute begins to run.' 37 C.J. 810; Deaton v. Rush, 113 Tex. 176, 252 S.W. 1025. It is elementary that a remainderman has no right of possession until the termination of the life estate. As said in Cook v. Caswell, supra: 'A plaintiff in an action of trespass to try title, must show that he has a possessory title to the land at the time of the demise laid in the petition. \* \* This the plaintiff failed to do as to so much of the land as is represented by the life estate of his father, J. M. Caswell.' Nothing is more certain than that a present right of possession is essential to plaintiff's cause of action in trespass to try title. A necessary allegation of the plaintiff's petition prescribed by statute is 'that he was in possession of the premises or entitled to such possession.' R.S.1925, art. 7366. See, also, State v. Dayton Lbr. Co., 106 Tex. 41, 155 S.W. 1178; Stephens v. Motl, 82 Tex. 81, 18 S.W. 99; Carey v. Starr, 93 Tex. 508, 56 S.W. 324. Right of possession being an essential of a cause of action in trespass to try title, such cause of action, it seems to us, cannot accrue within the foregoing definition of accrual, until the life estate in some manner terminates. That reason for the statute not running, it is manifest, would apply to strangers and naked trespassers just the same as to those holding possession under the life tenant.

"There are no reasons discussed as the basis of the holding in either of the two cases mentioned. Elcan v. Childress, supra, simply cites McConnico v. Thompson. The latter cites only Watrous' Heirs v. McGrew, 16 Tex. 506. The only thing said in Watrous' Heirs v. McGrew that could even be contended as having a bearing on the question was 'that one tenant in common may maintain an action of trespass to try title, against a stranger.' We are thus left to speculate as to the theory upon which the decisions were based. But two possible theories suggest themselves to our mind.

"One is that a life tenant or a tenant in common with a life tenant, having a possessory right, and therefore an accrued cause of action against a trespasser or stranger, is a representative of the remainderman with power by his inaction to bind the remainderman. The other may be based upon the well-known principle that possession alone is sufficient evidence of title to enable the possessor to maintain trespass to try title against a trespasser or one making a subsequent entry without any color of title.

"That an exception cannot be based upon the first theory is well shown by authority that must be regarded as of

equal or greater rank than the decisions mentioned. That limitation is not set in motion against a remainderman during the term of the life estate because of the existence of a right of action in the life tenant or another tenant in common is well shown in cases like Cole v. Grigsby, Tex.Civ.App., 35 S.W. 680, 690, affirmed by the Supreme Court in 89 Tex. 223, 35 S.W. 792, and Millican v. McNeill, 102 Tex. 189, 114 S.W. 106, 21 L.R.A.,N.S., 60, 132 Am. St.Rep. 863, 20 Ann.Cas. 74. See, also, Court of Civil Appeals decision in the same case; Schnabel v. McNeill, Tex. Civ.App., 110 S.W. 558."

In Baylor Law Review, Vol. IX, No. 2, pp. 191–192, in an excellent article by Louis S. Muldrow, it is stated:

"As previously stated, the absence of possessory interest in the remainderman protects him from the adverse possessor of the land. But when the remainderman also owns a present possessory interest in the estate it would seem that he is subject not only to divestment of his present interest, but also of his future interest. In Elcan v. Childress (40 Tex.Civ.App. 193, 89 S.W. 84, wr. ref.), the fee simple to the intestate's separate property passed to his children subject to a life estate in one-third of the property in the surviving spouse. A stranger to their title occupied the land adversely under a duly recorded deed and the court allowed the five year statute of limitations to defeat not only the life tenant and two-thirds present possessory interest in the children, but also the one-third remainder in the children, though the life estate had not yet terminated. The court stated:

"'The case is not one where the life estate extended to the whole * * *. In such cases the remaindermen have no right to possession until the termination of the life estate, and hence as to them, limitation will not run until then. But where, as here shown, the posses-sor is a stranger to the title of both the life tenant and the remaindermen, the possession is adverse to both, and each has, as before stated, right to action for recovery as soon as the adverse possession begins; and permitting this possession to continue for the statutory period will bar the right of both the life tenant and the remainderman.'

"The Elcan case relied directly on McConnico v. Thompson (19 Tex.Civ. App. 539, 47 S.W. 537), where the facts and conclusions of law were the same. The McConnico case, in citing Watrous v. McGrew (16 Tex. 506), seems to conclude that the remainderman loses not only his present possessory interest but also his remainder by virtue of the fact that one tenant in common may maintain an action of trespass to try title against a stranger who invades the premises under a claim inconsistent with the cotenant's interest.

"The Elcan and McConnico decisions have not gone without criticism. Dicta in Hensley v. Conway (29 S.W.2d 416), questions the correctness of the holdings in both cases. The gist of the court's contention is that limitation does not run against a cause of action until such cause of action accrues. And, there is no accrual of a cause of action until the party has the right to institute a suit to protect his interest. Since the remainderman has no right to possession until the termination of the life estate, and because a possessory interest is a requisite to an action of trespass to try title, the court contends that no cause of action accrues which limitations could defeat. It would appear that such reasoning would give the party who owns a possessory interest as well as a remainder a type of dual ownership. The dual nature of ownership would allow a portion of his interest to be defeated by limitations while the other remains secure. The Elcan and McConnico cases give no discussion to

the point and obviously consider that failure to protect one interest with an available action will likewise result in loss of the other interest despite the fact that ownership of the latter, alone, affords no cause of action or remedy." (Interpolations ours.)

In Evans v. Graves, supra (166 S.W.2d 955, 958), it is stated:

"The applicable rule here involved is stated in Hensley v. Conway, Tex. Civ.App., 29 S.W.2d 417 (citing numerous authorities), that 'The statutes of limitation as to an interest in land, which one owns as a remainderman, subject to a life estate in another, do not begin to run in favor of one in possession until the death of the life tenant.' Appellees concede the above general statement of law as applied to an uninterrupted continuation of the life tenancy; the rule being that during an ordinary life tenancy, a remainderman has no cause of action; but argue that an exception exists where the remainderman has an available remedy, or means of legally protecting himself, in which event, limitation would bar his rights even during the period of life tenancy. The remedy available in the instant case, as appellants contend, was an accrued right of action on at least two counts, (1) to construe the Pulliam will, or (2) suits to remove cloud from title to her future estate; and Howth v. Farrar, 5 Cir., 94 F.2d 654, is mainly relied on in support of the judgment in appellees' favor.

"* * * Though appellants might have been able to maintain a suit during the life estate to quiet title, yet she was not compelled to do so until a right of possession accrued. Restatement of the Law, Property, § 222, p. 902, states the rule generally applied; including states where, by statute, the action to quiet title or remove cloud is more comprehensive, in contrast to its limited application in Texas, by reason of the broad scope of our trespass to try title laws; Vernon's Ann.Civ.St., Art. 7364, et seq.; see Thomson v. Locke, 66 Tex. 383, 1 S.W. 112. Says Restatement, supra: 'Frequently the owner of a future interest as such can establish his ownership by suit in equity to quiet title or to remove a cloud upon title or by analogous statutory proceedings legal or equitable. It might be reasoned that this fact should require him to avail himself of these rights of action and that the statutory period should thenceforth run, not only upon these equitable and statutory proceedings, but also upon the action of ejectment which might be brought when the interest becomes present. However, these equitable and statutory proceedings are considered to be created for the additional protection of the owner of the future interest; and to hold that their existence causes the statute of limitations to run upon ejectment proceedings would in considerable measure reduce the protection accorded to the future interest holder when his estate becomes present. It is therefore immaterial in computing the statutory period in an action of ejectment or similar proceeding that, before the plaintiff's estate became a present interest, he could have brought suit to quiet title or to remove cloud on title or could have commenced a statutory proceeding analogous to one of these.'

"Appellees do not contend that one holding a future interest can sue in trespass to try title prior to termination of the life estate; for only upon that event could plaintiffs have maintained a possessory cause of action; Hensley v. Conway, supra. * * *"

As stated in Baylor Law Review, supra, the Elcan and McConnico decisions have not gone without criticism and Hensley v. Conway, supra, questions the holdings in

both cases. Irrespective of the soundness or unsoundness of the Elcan and McConnico decisions, the same are not applicable to the facts in the case at bar for the following reasons: In the McConnico case the appellants *owned a ⅔ present possessory estate* in the land in question and were remindermen as to a ⅓ life estate in the land. Also in the Elcan case the appellants also owned a *present possessory interest* in the land in question in addition to being remaindermen to a portion of the land held by life estate by another. The Elcan case specifically distinguishes itself from cases where the life estate extended to the whole of the property as in the case at bar where the life estate of Louis T. Johnston, Sr., extended to the whole of the property and appellees had no portion of the possessory interest in the property until the death of the life tenant. In this connection the Elcan case states [40 Tex.Civ.App. 193, 89 S.W. 85]:

> "The case is not one where the life estate extended to the whole, as in the cases of Cook v. Caswell, 81 Tex. 678, 17 S.W. 385; Govan v. Bynum, 17 Tex. Civ.App. 180, 43 S.W. 319, and Beaty v. Clymer, 32 Tex.Civ.App. 322, 75 S.W. 540, cited by appellants. In such cases the remaindermen have no right to possession until the termination of the life estate, and hence, as to them, limitation will not run until then.
>
> * * *" (Italics ours.)

The case of Howth v. Farrar, 5 Cir., 94 F.2d 654, relied on by appellants, was not followed by the majority of the Dallas Court of Civil Appeals in Evans v. Graves, supra (166 S.W.2d 955, 959), with the majority stating in said opinion as follows:

> "To the extent of the conclusions just reached, it is evident that our views are similar to those expressed in the dissent of Judge Holmes in the Circuit Court appeal of Howth v. Farrar, 5 Cir., 94 F.2d 654, relative to an interpretation of the Texas appellate

> decisions on the subject discussed; with due respect and consideration, of course, for the reasoning of the able jurist who wrote that Court's majority opinion." (Italics ours.)

The Supreme Court of Texas refused an application for writ of error in Evans v. Graves, supra, with the notation, "No reversible error." This court also declines to follow Howth v. Farrar.

We have also carefully considered the other authorities cited by appellants in their excellent brief and are of the opinion that same are distinguishable from and are not applicable to the facts in the case at bar.

The judgment of the trial court is affirmed.