### STATE OF TEXAS V. DAYTON LUMBER COMPANY ET AL.

#### No. 2505. Decided April 16, 1913.

**1.—Trespass to Try Title—Action—Vendor and Vendee.**

A vendor of land whose vendee has not made default, not being entitled to possession, can not maintain a suit for it against one claiming adversely to the vendee, though as between himself and the vendee he holds the superior title under a reservation in the deed of the vendor's lien; and the same rule applies to the State as a vendor where it seeks to maintain the same character of action against one claiming adversely to its vendee. (Pp. 44, 45.)

**2.—Same—School Land—Conflicting Titles—Venue.**

In an action for land by those claiming it under executory purchase from the State (as school land occupying a vacancy between older patented surveys) against the holders under the patents (who claimed that there was no vacancy), such school land purchasers not being in default in their payments, the State was improperly joined with them as a plaintiff, and the suit could not be brought in Travis County, as an action by the State, under authority of article 5468, Rev. Stats., 1911 (Act of Feb. 23, 1900, Laws, 26th Leg., 1st Called Session, p. 29), the defendants residing and the land lying in another county. The interest of the State in the deferred payments due from the purchaser to the school fund and its legal title held to secure them did not entitle it to maintain or join in the suit. (Pp. 43-45.)

**3.—Same—Statute.**

The Act of February 23, 1900, was not designed to enlarge the rights of the State to bring actions not before authorized. School land which has been sold by the State ceases to be "land belonging to the school fund" within the meaning of the caption to that Act; and the language in section 8 (Rev.

Stats., 1911, art. 5468), "lands in which the State or any of such funds have an interest;" clearly refers to an interest in such lands for which the State is entitled to sue.   (Pp. 45, 46.)

#### 4.—Same—Statutory Construction.

The propriety of giving a right of action to the State for the protection of its lien on lands sold addresses itself to the Legislature, and can not enlarge by construction the right granted by it.   (P. 46.)

Questions certified from the Court of Civil Appeals, Third District, in an appeal from Travis County.

*B. F. Looney,* Attorney General, and *G. B. Smedley,* Assistant, for the State.—Words employed by the Legislature shall be taken in their ordinary and popular acceptation, unless some good reason appears for disregarding the ordinary meaning of the words.   Rev. Stats., 1911, art. 5502; Thompkins v. McKinney, 93 Texas, 629; Turner v. Cross & Eddy, 83 Texas, 218.

A statute must be construed with reference to and in harmony with existing laws.   Lewis' Sutherland on "Statutory Construction," sec. 444; Hanrick v. Hanrick, 54 Texas, 101; Mills County v. Lampasas County, 90 Texas, 603.

Every part or section of a statute must be construed with every other part or section so as to produce a harmonious whole.   Lewis' Sutherland on "Statutory Construction," sec. 368.

In construing a statute it must be presumed that the Legislature did not intend to divest the State of any of its powers or property.   See Black on Interpretation of Laws, pp. 109-315.

The construction placed upon a statute by Governors and other officers of the State ought not to be overturned.   H. & T. C. Ry. Co. v. State, 95 Texas, 507.

Where the text of a statute is plain and unambiguous the title can not have the effect of modifying it.   Lewis' Sutherland on "Statutory Construction," sec. 339; Patterson v. Bark Eudora, 190 U. S., 169.

The Act of February 23, 1900, fixed the venue of this suit in Travis County, because the State has an interest in the land—a right growing out of the land.

*L. R. Bryan, L. B. Moody, Duval West, Jno. W. Maddox,* and *N. A. Rector,* for co-plaintiffs McDonald and others, appellees.—The right of the State to join its co-plaintiffs in this suit is determined by its interest in the land, and not by the fact that she can or can not maintain this suit in trespass to try title.   The school fund has an interest in the land, a right growing out of the land to the extent of the full purchase price of the land and the timber.   Defendants claim this land adversely to the State, and deny that the State rightfully sold it to her co-plaintiffs.   The interest of the school fund in the land is in jeopardy, and we submit that it was not only the right of the State to join its co-plaintiffs in this suit, but as trustee for the school fund the State was bound to do so.   Otherwise the words of section 8: *"or any lands in*

*which this State, or any such funds have an interest,"* and the words, *"or affecting the title thereto or right growing out of the same,"* are meaningless.

*Gregory, Batts & Brooks. Stevens & Stevens,* and *A. D. Stone,* for appellees.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

In certifying to us the questions that hereafter appear, the Honorable Court of Civil Appeals has made the following statement:

"This case is now pending in this court on motion for rehearing, and the questions herein below certified, among others, have arisen for our decision.

"The State of Texas et al. were plaintiffs, and the Dayton Lumber Company et al. were defendants. The trial court rendered judgment for the latter. That judgment we have reversed, but we have sustained a cross assignment and hold that venue was improperly laid in Travis County.

"The facts, in so far as they are pertinent to said questions, are as follows: In 1904, the Commissioner of the General Land Office held that the land in controversy was vacant, unappropriated land, belonging to the public school fund, lying between the western boundaries of the Martinez surveys and the eastern boundaries of the I. & G. N. Ry. Co. surveys, which surveys had been made long prior to that date, and sold said land in accordance with law. The timber growing on said land was sold separately for the sum of $3557.40. The purchaser paid one-fortieth of the purchase money and executed his obligations for the remainder. Said sales are in good standing in the Land Office; and the plaintiffs Maddox et al., are the owners of whatever title, if any, was conveyed by the State in said sales.

"The defendants contend that no vacancy ever existed between said Martinez and said I. & G. N. Ry. Co. surveys.

"The State joined the other plaintiffs in bringing this suit, alleging that it had an interest in the subject matter in controversy, in that if it be held that no vacancy exists between said surveys, it will be compelled to repay the purchase money received for said land, and cancel said obligations, and that thereby the State and the public school fund will suffer loss in the sum of $6466.80.

"Plaintiffs allege that the claim of defendants that no vacancies exist between the boundaries of said surveys casts a cloud upon the title conveyed by the State to said land, and pray that the boundaries of said Martinez surveys and said I. & G. N. Ry. Co. surveys be established, and that said cloud be removed.

"The land in controversy is situated in Liberty County, Texas, in which county the defendants reside. The suit was brought in the District Court of Travis County.

"The defendants in proper time and form plead their privilege to be sued in Liberty County, which plea was by the trial court overruled.

The action of the trial court in overruling said plea of privilege was duly excepted to by defendants and presented to this court by a proper bill of exception.

"It is the contention of the State that the Act of February 23, 1900, page 29 (Rev. Stats., 1911, art. 5468), gives the District Court of Travis County jurisdiction to try this case. We held, as appears from a copy of our opinion hereto attached, and made a part of this certificate, that jurisdiction of this case was improperly laid in Travis County, and the effect of which holding is that the State of Texas is not a proper party to this suit.

"With the foregoing statement and explanation, the Court of Civil Appeals for the Third District propounds to the Supreme Court the following questions:

"1. Under the facts above set out, is the State of Texas a proper party to this suit?

"2. If so, was the venue properly laid in Travis County?"

The statement presents a case where both the State and its vendee of a tract of school land, whose purchase is in good standing, are seeking in the same suit to maintain an action for the land in trespass to try title against adverse claimants.

The right of the State to make itself a party plaintiff and to therefore lay the venue of the suit in Travis County, is claimed by virtue of section 8 of the Act of February 23, 1900, General Laws of 1900, page 29 (Rev. Stats., 1911, art. 5468), which is as follows:

"When any of the lands described in this title, or any of the other public lands of the State held or owned by any fund, or any lands in which this State, or any such funds, have an interest, are held, occupied or claimed by any person or association or corporation adversely to the State, or to such fund, it shall be the duty of the Attorney General to institute suit therefor, together for rent thereon, for any damages thereto; and for the purpose of any such suits for such lands, or affecting the title thereto, or right growing out of the same, the venue thereof is fixed in Travis County, Texas, concurrently with the county of defendant's residence, and the county where the land is situated; and the courts of said county shall have the same jurisdiction over the defendant and the subject matter of the same as if such defendant resided, and such property was situated, in said county."

In order for the plaintiff to prevail in the action of trespass to try title, he must establish the right of possession to the land. The petition must state either that he was in possession when the right of action accrued, or that when ousted he was entitled to such possession. It is settled law in this State that a vendor of land, whose vendee has not made default, can not maintain a suit for it against one claiming adversely to the vendee, because of his not being entitled to possession, though as between himself and the vendee he holds the superior title under a reservation in the deed of the vendor's lien. Stephens v. Motl, 82 Texas, 81; Carey v. Starr, 93 Texas, 508. The relation of the State to school land sold to a purchaser in compliance with the law, whose

purchase is in good standing, is not essentially different from that of a vendor in ordinary sales of land where the vendee has not made default; and, unless exempt from its operation because of some statutory enactment, no sound reason can be given why the rule that in such a case denies to the ordinary vendor the right to maintain the action of trespass to try title against one claiming adversely to his vendee, should not be held equally applicable to the State where it seeks to maintain the same character of action against one claiming adversely to its vendee. In valid sales of school land the purchaser is entitled to the exclusive possession so long as his purchase is in good standing, both as against the State and all others; and under such conditions the State can acquire no such right of possession as is necessary to support the action of trespass to try title. Until the purchase is completed the State holds the superior title, but the law plainly is that the purchaser acquires such an equitable title as will support the action. Hazelwood v. Rogan, 95 Texas, 295. As such right inures to him by its acquisition from the State through his purchase, it can not remain with the State at the same time.

A study of the Act of 1900 convinces us that it was not designed to enlarge the rights of the State in this particular. By reference to that part of its title in relation to suits by the State thereunder authorized, it will be noted that its language is, "and providing for suits in Travis County against any person claiming any of the land belonging to the school fund or any other funds." Lands that are validly sold become segregated from the mass of lands held in the several funds, and can not be said to thereafter "belong" to such funds. Upon the sale the obligation of the purchaser belongs to the proper fund, taking the place of the land as an asset of the fund, but such is not the status of the land. It is evident, therefore, that the purpose of the Act in relation to suits, as reflected in the title, was not to provide for suit by the State in respect to lands formerly belonging to the several funds but of which the State had made sales, valid in their inception and remaining in good standing, but was to authorize such action by the State only in respect to lands whose status was such as to constitute them still the property of such funds.

The phrase in section 8 of the Act, "or any lands in which this State, or any such funds, have *an interest,*" clearly refers to an interest in such lands for which the State is entitled to sue. It does not mean an interest of the character that it is claimed the State has in this land; one which is limited as a result of its sale, and can not be asserted in derogation of any right acquired by its vendee thereunder; whose main essentials are inconsistent with any right of possession; and for which, accordingly, in this kind of action no judgment in its favor could be rendered. This is made plain by the further provision in the section, relating to such "interest," which declares it to be the duty of the Attorney General "to institute suit therefor."

Reference is made by counsel for the State to a section of the Act of 1905, reading as follows: "When any land, lying between older sur-

veys, is held by the Commissioner of the General Land Office to be unsurveyed or vacant land appropriated to the public school fund by the Act of February 23, 1900, and is sold as such under the provisions of this Act, and thereafter any suit arises between the owner or owners of such older surveys, and the purchaser from the State or his vendees, any final judgment rendered in such suit shall be deemed and held conclusive as to the existence or non-existence of such vacancy; provided, if in any suit judgment is obtained through collusion or fraud against the State, the same may be set aside or vacated at the suit of the State any time within five years thereafter"; in which connection it is argued that if the State may institute its suit within five years to vacate such a judgment on the ground of fraud or collusion, it should be permitted in the first instance to join with its vendee in a suit against one claiming adversely to him so as to prevent a fraudulent or collusive judgment. This argument might with force be addressed to the Legislature for the enactment of such a statute, but it can not be said that the Act under review makes any such provision. That the Act of 1905 denies any force to a judgment in such a case as against the State until after the lapse of a period of five years; that it expressly authorizes suit by the State to vacate the judgment within that time, and otherwise makes it conclusive, precludes rather than sustains the view, in our opinion, that the intention of the Act of 1900 was to authorize the original joinder of the State as plaintiff with its vendee in such a suit.

We do not wish to be understood as holding that section 8 of the Act of 1900 limits the right of the State to institute suits only for the *recovery* of such lands as are referred to in the Act, and to lay the venue of only such suits in Travis County. The provision in the section authorizing the institution by the Attorney General in Travis County of suits "affecting the title to such lands, or right growing out of the same," might properly be held to apply to certain classes of suits other than for the recovery of such lands. We confine our opinion to the case before us, and hold that in this case the State was not a proper party. We accordingly answer the first question in the negative, from which it follows that the venue of the suit was not properly laid in Travis County.

Mr. Associate Justice Hawkins did not participate in the decision of this case.