**SHELL PETROLEUM CORPORATION et al.**
**v. STATE.**
No. 8288.

Court of Civil Appeals of Texas. Austin.
July 10, 1935.

Opinion Modified and Motion Overruled
Sept. 25, 1935.

W. H. Francis and Walace Hawkins, both of Dallas, P. G. McElwee, of St. Louis, Mo., J. B. Robertson, Dan Moody, and Thos. B. Greenwood, all of Austin, Edward H. Chandler, of Tulsa, Okl., and Paul A. McDermott, of Fort Worth, for appellants.

Wm. McCraw, Atty. Gen., H. Grady Chandler, Asst. Atty. Gen., and Ralph W. Yarborough, of Austin, for the State.

McCLENDON, Chief Justice.

Appeals (1) by the Shell Petroleum Corporation and Magnolia Petroleum Company jointly, and (2) by the Sinclair Prairie Oil Company alone, from an ex parte interlocutory order appointing a receiver of a 37.6-acre tract of land in the East Texas oil field (Gregg county), upon verified petition of the state. The Shell and Magnolia have superseded the order by bond of $100,000, and the Sinclair by bond of $10,000; the amount of each being fixed by the trial judge.

A large number of defendants are joined in the petition, alleged to have some claim in the land. Their respective claims, however, are not specifically set forth other than may be inferred as regards the three appellants from the allegations noted below.

The petition contains two counts. The first is in the ordinary form in trespass to try title. The allegations of the second will be substantially stated below.

Attached to the petition is a map showing the 37.6 acres, and the producing wells upon it and upon contiguous surveys. The 37.6 acres is a strip 120.6 varas wide at its eastern and 117 varas at its western ends. Its north and south lines are 1,791 and 1,787.3 varas, respectively. It is divided on the map into four tracts: At the west end a tract approximately 325 feet square containing a fraction over 2 acres; next toward the east a tract containing 15.53 acres; adjoining this on the east a tract containing 12.42 acres; and on the extreme east end a tract containing approximately 7 acres. The 15.53 and 12.42 acres will be respectively referred to as the Sam Carr and Donnie Carr tracts.

As to these two tracts it is alleged: They were patented to Sam and Donnie Carr, respectively, on September 20, 1934, the state reserving the mineral title. The

Carrs "as agents of the plaintiff (under the relinquishment act) executed lease contract on September 14, 1934, to R. C. Rochelle, for the development and production of the oil and gas from said land, which lease contracts were assigned by said Rochelle on September 17, 1934, to A. P. Carr, Trustee." On December 13, 1934, the Railroad Commission granted Carr, as lessee of plaintiff, permission to drill four wells, two on each tract, being locations 3 and 5 on the Sam Carr and 2 and 4 on the Donnie Carr, as shown on the map. Subsequent to the lease the defendants, other than Carr, have sued him "individually and as trustee in the District Court of Gregg County, for said land and are contesting the permits issued to said Carr, trustee, thereby involving the title of plaintiff in doubt." The Magnolia has one producing well on the Sam Carr tract, the Shell has two producing wells on the Donnie Carr tract, and the Sinclair has one producing well which the map shows on the eastern tract. There are no wells on the western tract. Prior to the Carr leases, "the defendants" have extracted large quantities of oil from the land for the value of which ($500,000) the state sues. It also sues for the oil subsequently and still being extracted, the quantity of which is alleged to be unknown.

The grounds for the receivership are to protect by development the state's interest which is being irreparably injured by drainage from wells on adjacent lands in which the state has no interest. The receivership is also prayed for upon various grounds, in order to take charge of the producing oil wells, hold the proceeds, etc.

The prayer for immediate appointment of a receiver is predicated upon the allegation that there are a large number of widely scattered defendants, some of whom live outside the state; that it would take several months to notify them for the purpose of a hearing; and that in the meantime great irreparable loss would accrue to the state.

The order recites that the receivers were appointed " * * * of the above described tract of land and of all and singular the property, rights and privileges incident thereto including the petroleum oil and gas therein and of all improvements of every character thereon, including all producing oil and gas wells, with the power and under the direction that they take immediate possession and charge of all of the same with full authority to carry on and conduct the development and production of the petroleum oil and gas from the said land, market the same, receive and receipt for monies accruing therefrom, bring suits and generally manage the said property and to hold the proceeds arising from such operations subject to the orders of this Court."

The defendants were " * * * enjoined from in any way interfering or intermeddling with the property hereby directed to be turned over to the said Receivers or from hindering or molesting them in any way while acting as such Receivers, and from disposing of said property, except to transfer and turn same over to such Receivers, subject to the orders of this Court."

In view of the situation presented by the above allegations, each of the four tracts comprising the 37.6 acres will be first considered separately.

■ At the outset it should be borne in mind [as stated in Hunt v. State (Tex. Civ. App.) 48 S.W.(2d) 466, 468] that "appointment of a receiver without notice to the adverse party is one of the most drastic remedies known to the courts and should be exercised only in extreme cases, where the right thereto is clearly shown, and then in the exercise of great caution by the court."

■ Even in the matter of granting injunctions ex parte, it is the rule that the "averments of material and essential elements must be sufficiently certain to negative every inference of the existence of facts under which petitioner would not be entitled to relief." Johnson v. Ferguson (Tex. Civ. App.) 55 S.W.(2d) 153, 159.

Unlike art, the averments must leave nothing to the imagination.

The petition clearly does not allege a condition of affairs which would warrant wresting the possession of the producing oil wells upon the two Carr and the eastern tracts from appellants. The only interest of the state in this regard is to be secure in the proceeds of the oil which is being produced from these wells. This may very readily be achieved without a receiver's taking charge of the physical property. If necessary, the proceeds might be impounded, and if no other feasible plan could be devised, this impounding might be in the hands of a receiver, appointed

only for that purpose. However, before this course might properly be resorted to, those actually in possession of and claiming the wells should be given opportunity to secure the state in this regard by bond or otherwise.

■ The only allegations of the petition warranting in any event the appointment of a receiver are those which relate to drainage of the property by wells on adjoining lands in which the state has no interest. As to the three eastern tracts, the petition shows, at least by inference, that they are in possession of and claimed by the three appellants. These were certainly entitled to a hearing before a receiver was appointed to develop these tracts, unless the exigencies of the situation were such that irreparable injury would accrue to the state prior to the time they could be notified and a hearing had. Their right to an opportunity to be heard could not be defeated under the general allegation that it would take several months to notify all the widely scattered defendants whom the state had made parties to the litigation. Manifestly, the appellants were readily available, as they were in actual possession of the producing wells on the property and could have been notified promptly—by wire, if necessary.

■ The asserted right to a receiver of the two Carr tracts for development purposes upon the showing of the petition is further inadequate, in that it appears that the state has patented these tracts and an oil lease or leases have been executed by the patentees under the Relinquishment Act (Rev. St. 1925, art. 5367, et seq.), leaving in the state only its ⅟₁₆ royalty interest, and its right of reverter, upon breach of the conditions of the lease. The state, therefore, has no present right of possession of the property essential to entitle it to maintain an action in trespass to try title. State v. Dayton Lumber Co., 106 Tex. 41, 155 S. W. 1178.

■ The petition affirmatively shows that the lessee has made application to the Railroad Commission to further develop the property, and the commission has granted two additional wells on each tract; but that these permits are being contested by the defendants. There is no allegation that the lessee is not doing everything that he can to develop the property and perform the obligations imposed upon him as lessee.

The only way the permits granted by the Railroad Commission to the lessee can be contested is by appeal from the commission's orders to the district court of Travis county. The petition is silent as to whether this has been done. This would seem to follow, however, from the allegation that defendants are contesting the permits. The state is as much bound as private individuals by its Conservation Laws. No additional well could be drilled upon either tract without a permit granting an exception under rule 37. The order of the commission in granting or refusing such permits is conclusive unless reviewed in the manner prescribed by statute; that is, by appeal to the district court of Travis county. That court likewise has full power to grant all necessary ancillary relief pending the litigation. The state, as an interested party, has the right to intervene in such proceeding and assert its rights. It can accomplish every objective in that regard by a direct intervention which a receiver could accomplish. A receiver could acquire no greater right to develop the property than the lessee. Every action which the receiver might assert either before the commission, or in an appeal from its orders, is available to the lessee. If ancillary relief of any character is essential to enable the lessee to perform its obligations to the state, it may be obtained by the lessee, the state, or both, without the intervention of a receiver. One essential distinction (among others) between this case and Hunt v. State is the fact that there the lessee joined the state in the prayer for receiver.

It is true the petition alleges that "100 days have expired since the issuance of the patents above mentioned to said Sam Carr and Donnie Carr, and that during all of that time they have permitted the petroleum oil and natural gas to be drained through wells situated both on the said land and adjacent to it by defendants above named who are claiming the same adversely to the plaintiff." It is not, however, asserted that this failure was under such circumstances as to give the right of forfeiture under R. C. S. arts. 5369 and 5370; or that the state claimed such right of forfeiture. On the contrary, the petition otherwise alleged what appeared to be a bona fide effort to comply with the law; both on the part of the patentees in promptly executing leases, and on that of the lessee in applying for permits to drill.

If, however, the allegations be treated as sufficient to show a forfeiture, we are then met with the problem of treating the entire 37.6 acres as a single tract. As such it already has more than the normal quota of wells under the spacing rule (37) now applicable to the East Texas field. Three of these wells are on the Carr tracts. The petition is uncertain whether they were separately or jointly leased. Together the three wells would constitute more than their normal quota. As to the Donnie Carr tract, it alone has more than its normal quota, and the spacing seems to meet generally the equidistant offset theory.

The extreme eastern tract, considered alone, has one producing well on about 7 acres. This is in excess of its normal quota. The position of this well gives it an advantage over wells to the south and west, and a position of equality to the north. There are no wells, and consequently no drainage, to the east. The right of further development of this tract, taken separately, is negatived by the map showing. See, in this regard, Sun Oil Co. v. Gillespie (Tex. Civ. App.) 85 S.W.(2d) 652 and Atlantic Oil Production Co. v. Railroad Comm. (Tex. Civ. App.) 85 S.W. (2d) 655.

If the extreme western tract were taken separately, and the allegations which are made generally regarding the entire 37.6 acres were made specifically regarding this tract, we would be inclined to affirm the order as to it. The above pointed out ambiguity in the pleadings, however, makes it quite uncertain whether the state is contending for a receiver of the entire 37.6 acres as a whole, or of the four tracts which comprise it, independently. In view of this uncertainty, we think the entire order should be set aside, and the rights of the parties upon the application for receiver determined after full hearing.

The order appealed from is set aside, and the cause remanded to the trial court.

Order set aside; cause remanded.

On Appellee's Motion for Rehearing.

The motion questions only that portion of our opinion to the effect that the title or interest remaining in the state in the two Carr tracts, after execution of the mineral leases, was not such as would support an action in trespass to try title. This holding is assailed upon two grounds:

1. Because, as held by the Supreme Court in Sheffield v. Hogg, 77 S.W.(2d) 1021, a royalty owner has an interest in land.

2. Because the mineral reservation by the state extended to all minerals, whereas the mineral lease of the state's vendee only covered oil and gas. The state, therefore, still held an unqualified title to all minerals other than oil and gas, which would support an action in trespass to try title.

The instant appeal involves only the correctness of the trial court's interlocutory ex parte order appointing a receiver. The right of appellee to maintain the suit either in whole or in part is not involved, except incidentally. Our decision is not rested upon the questioned holding, and it may be disregarded as having any controlling effect.

We believe appropriate, however, a brief statement of our views upon the two points urged.

Our holding in no sense conflicts with that in Sheffield v. Hogg. We fully recognized the state's interest in the oil and gas and its development. We do not believe, however, that where an owner of real estate has parted with every title and interest in land except that of a royalty holder of minerals under a mineral lease which accords to the lessee the full right of development, and consequently of possession, the interest thus reserved is sufficient to support an action in trespass to try title. The right of the state to full protection of its royalty interest, in a proper proceeding and forum, is conceded.

The correctness of the second point may be admitted, for the purposes of this appeal. It is not necessary that we express an opinion upon it. It should be noted, however, that the receivership involves only the oil and gas minerals, and their development. It is not alleged that the land contains any other minerals, and the powers of the receiver, sought and granted, did not involve their development.

While the motion is styled one for "rehearing," its only prayer is for modification of our opinion in the above respect.

Other than to eliminate our above-questioned holding as in any way controlling our decision, the motion is overruled.

Opinion modified, motion overruled.