LAW et ux. v. STANOLIND OIL & GAS
CO. et al.
No. 11964.

Court of Civil Appeals of Texas. Galveston.
March 4, 1948.
Rehearing Denied March 25, 1948.

Masterson & Pope, of Angleton, for appellants.

R. F. Burns, of Houston, for W. T. Burns and R. F. Burns, appellees.

Turner, Rodgers, Winn & Scurlock, and George Terry, all of Dallas, for Stanolind Oil & Gas Co. and other appellees.

Donald Campbell and L. A. Thompson, both of Tulsa, Okl., of counsel, for Stanolind Oil & Gas Co.

CODY, Justice.

This suit was brought by appellants, Mr. & Mrs. J. F. Law, against the Stanolind Oil and Gas Company, and certain other defendants, in trespass to try title to all of the oil, etc., in and underlying and that may be produced from an undivided 23/24ths of 5.63/45.63 of one half in and to two contiguous tracts of land in the Hastings Oil Field, in Brazoria County, consisting of 80 acres, and 5.63 acres, and against the Stanolind the action was also brought to recover damages for failure to pay royalties alleged by appellants to be apportionable to their interest in the production according to the terms of a certain oil and gas lease. In brief, the theory of appellants' suit is that they owned the royalty right with reference

to a 5.63 acre tract, and that said tract had been unitized with the 80 acre tract, so that appellants had the right to share in the production from wells located on the 80 acre tract.

It was undisputed that on April 23, 1934, appellants owned and resided on a farm in Brazoria County, consisting of 85.63 acres. On that date, appellants gave an oil lease on their farm to Gillette Hill, reserving the usual 1/8th royalty. Then, on May 2, 1934, Hill assigned said lease to the Stanolind. Thereafter, on February 6, 1935, appellants, in consideration of $1250 executed a cumulative lease to the Stanolind on the same land. Said cumulative lease bore the same date as that of the Gillette Hill lease, and ran for the same period, but there were certain changes made, not necessary to specify. While the language used in describing the land in the cumulative lease differs in some respects hereafter indicated, yet the land so described in the cumulative lease was without question the same land.

A further statement of facts will be reserved to be made later in connection with appellants' relevant points. All of the defendants were duly cited. Such of those as failed to appear and contest appellants' suit had a judgment by default rendered against them. The court, trying the case without a jury, rendered judgment that appellants take nothing as against the answering defendants. In response to appellants' request, the court filed conclusions of fact and law of unusual length.

■ Appellant predicates his appeal on six points. The first is to the effect:

1. The mineral deeds executed by appellants in favor of J. C. Thompson and L. W. Wickes specifically limited the royalty interest conveyed thereby to the 80 acre tract. So, it was error for the court to find that, on February 6, 1935 (the date the cumulative lease was executed), appellants owned all of the royalty payable in the Gillette Hill lease and the cumulative lease, subject to the conveyances of royalty theretofore made to J. C. Thompson and L. W. Wickes comprising a half interest in all of the royalty under the entire 85.63 acres.

We overrule the point.

As indicated above, appellants first gave an oil lease on their entire farm of 85.63 acres to Gillette Hill. However, the description of the land employed in the lease gave as the number of acres, "80 acres, more or less." The land was also described with reference to the survey number and abstract number. Immediately following the specific description of the land is the catch-all provision, reading "It is the intention that this shall also include all land owned or claimed by Lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys." It was not until the cumulative lease was given that the land was first described as consisting of two tracts.

Prior to the giving of the cumulative lease, appellants, by mineral deeds in common form, conveyed to J. C. Thompson and L. W. Wickes respectively an undivided fourth interest in the mineral estate in their farm, describing such land by the survey and abstract numbers, and further describing same as containing "80 acres, more or less." The mineral deeds each stated that the land in question is "now under an oil and gas lease executed in favor of Gillette Hill, it is understood and agreed that this sale is made subject to the terms of said lease * * * but covers and includes one-fourth (1/4) of all the oil royalty * * * due and to be paid under the terms of said lease, insofar as it covers the above described land." By the terms of the Gillette Hill lease, the operator thereunder was bound to pay a royalty of 1/8th of the oil from appellants' entire tract of land of 80 acres "more or less." There was nothing in the Gillette Hill lease to indicate that there were two tracts of land. Indeed, the inference is that the 85.63 acres was held under one fence, and that the overage of 5.63 acres was due to the fact that the occupation line was extended beyond the survey line. If it could be said that the intention was ambiguous, a familiar rule of construction would require a construction against the grantors in the mineral deed. Hoffman v. Magnolia Pet. Co., Tex.Com. App., 273 S.W. 828, 829. The evidence, however, shows that all of the interested

parties, including the operator of the lease and the division order, placed on the description the only construction which it would reasonably bear. One of the issues that was to be tried in this case at the time the parties made stipulations was what, if any, royalty right remained vested in appellants. The stipulation relied upon by appellants, we think, is not entitled to be construed as having the meaning contended for by them. In this connection we note that none of the parties holding mineral interests under the above stated mineral deeds were parties to this suit. An additional reason for holding that the court was not in error in rendering a "take nothing" judgment in this case, even if the mineral deeds were limited to the 80 acre tract will be given later.

Appellants' second point is to the effect that the cumulative lease constituted a valid operating agreement between the Stanolind and appellants, and clearly evidences an intention to unitize the 80 acre tract with the 5.63 acre tract. We overrule the point.

The description of the land covered by the cumulative lease is set forth in paragraphs "(a)" and "(b)" thereof. Paragraph "(a)" describes the 80 acre tract with reference to the survey number, and abstract number, and further describes it as consisting of two tracts of forty acres each, deeded to appellants by separate deeds. Paragraph "b" is an expanded or elaborate catch-all provision; it does not give the number of acres covered thereby, nor any field notes. Actually the catch-all provision covered 5.63 acres. Immediately following the description of the land is a statement that the first tract is covered by the Gillette Hill lease, and that such lease is owned by the Stanolind, and that the first tract is merely described for the purpose of ratifying and confirming said Gillette Hill lease. It is expressly stated that nothing in the cumulative lease shall be construed as in any manner cancelling or terminating the Gillette Hill lease or merging it in the cumulative lease. We copy the portion of the lease which we understand appellants contend worked a unitization of the 5.63 acres with the 80 acres.

"As to the second tract described herein, this lease shall operate as a present conveyance of all of the interest of lessors in said land, and that for operating purposes all of the land covered by said original lease and this lease shall be held by lessee herein as if it were one tract and shall be developed and operated as one tract, and the estates created by the original lease and this lease shall be coextensive and coterminus. The commencement of a well on the land covered by said original lease shall have the same effect as if such well was being drilled on the lands covered by this lease, and likewise if oil * * * is encountered in a well or wells located on the lands covered by the original lease, then * * * the completion of such well or wells shall have the same effect as if production had been encountered on the lands embraced in this lease, and the original oil * * * lease and this lease shall remain in force * * *."

██ It is well settled that where several owners of adjoining tracts of land join in a single lease to a third party for development of oil as a single tract, with the usual provision for payment of royalty, then, in the absence of an agreement to the contrary, the royalty must be divided among the lessors in the proportion that area of the tract owned by each lessor bears to the total area covered by the lease, and the ownership of the tract upon which a well may be drilled and from which production may be had is of no consequence. French v. George, Tex.Civ.App., 159 S.W.2d 566, writ refused; Parker v. Parker, Tex.Civ.App., 144 S.W.2d 303, writ refused. See Brown v. Smith, Tex.Com.App., 174 S.W.2d 43. Thus we see the rule is essentially the same as the rule for dividing the profit issuing from land owned by co-tenants. The reason for the rule is clear and simple. By the terms of the lease the lessee agrees to pay the lessors a specified royalty on production from a specified tract of land, which embraces tracts of two or more owners. Since the lease binds the lessee to pay the royalty on the production to all of the lessors, each lessor is by law entitled to share in the royalty in the proportion that his tract bears to the tract covered by the lease. The

384

rule is merely a rule of property. Where a lessee has agreed to pay more than one lessor a specified royalty on any production from a tract which includes tracts belonging to more than one lessor, the royalty by the terms of the lease belongs to the lessors. And the rule of property, where it has not been changed by agreement requires that the royalty must be shared by the lessors in the proportion which their tracts bear to the entire tract covered by the lease. But where there is only one lessor, the entire royalty belongs to him. This is true where the lease covers a single tract, or contiguous tracts. And there is no place for "unitization" where the ownership of contiguous tracts is united in one owner.

When appellants granted the lease to Gillette·Hill originally, they owned all of the royalty on the production from their farm, whether the farm be considered as a single tract of 85.63 acres, or as two contiguous tracts of 80 acres and 5.63 acres. Also the operator under said lease had the right to develop and operate the land subject to said lease as one tract. In this connection it is to be noted that the 5.63 acre tract is a narrow strip of land contiguous to the 80 acre tract, and runs the entire length of the 80 acre tract.

As indicated above, it is the position of appellants that the cumulative lease unitized the 80 acres and the 5.63 acres. It reads. so far as it could be said in any manner to bear on unitization, "this lease shall operate as a present conveyance of all of the interest of lessor in said land, and that for operating purposes all of the land covered by said original lease and this lease shall be held by lessee herein as if it were one tract and shall be developed and operated as one tract, * * *." As stated in the preceding paragraph, the Stanolind had the right to operate the 85.63 acres as one tract prior to the execution of the cumulative lease. It is quite likely that, as suggested by counsel for the Stanolind, that the controlling reason for the Stanolind purchasing the cumulative lease was the fact that shortly prior thereto a decision by a Court of Civil Appeals had held that the catch-all provision, such as was used in the Gillette Hill case, was void. Shortly afterward, the

cumulative lease was taken the Supreme Court reversed that decision.

But that explanation does not account for the provision "this lease shall operate as a present conveyance of all of the interest of lessors in said land," i.e., the strip. We need not fully explore the effect of such provision. Indeed the parties have not done so on appeal. But it is quite clear that the strip can be developed from wells on the 80 acres, and we think it equally clear the effect of the provision was to relieve the Stanolind from being required to drill on the strip. In any case, ownership of the strip would not entitle the owner to participate in the oil extracted from wells on the 80 acre tract. Japhet v. McRae, Tex.Com. App., 276 S.W. 669.

After the cumulative deed was given by appellants, they conveyed fractional mineral interests in their farm by deeds which contain this typical language:

"* * * an undivided 1 acre mineral fee interest (being an undivided 1/80 interest), in and to all of the oil * * * in and under and that may be produced from the following described tract of land * * *, to-wit: All that certain tract or parcel of land containing 80 acres, more or less * *. Said tract being now under an oil and gas lease executed in favor of Gillette Hill, it being understood and agreed that this sale is made subject to the terms of said lease, *but covers and includes 1/80 of all the oil royalty * * * due to be paid under the terms of said lease.*" (Emphasis supplied.) The division order signed by appellants in each instance declared that it was the intention that the description also included all land owned or claimed by them adjacent to the land particularly described.

■ Our conclusion is that appellants by mineral deeds conveyed away all of their royalty interest under the Gillette Hill lease and the cumulative lease; and that all the interest they had left in the mineral estate in the 80 acre tract and in the 5.63 acre tract was a right to the reversion when the leases ceased to exist. The action of trespass to try title is a possessory action. Since appellants have no present right of possession of the 5.63 acres, nor any portion thereof, the court correctly rendered

judgment that they take nothing by their suit. Shell Pet. Corp. v. State, Tex.Civ. App., 86 S.W.2d 245; and see State v. Dayton Lbr. Co., 106 Tex. 41, 155 S.W. 1178.

We have considered the other points urged by appellants. But since in our opinion, they owned no such interest in the property as entitled them to a judgment against the defendants who answered below, it would serve no useful purpose to further extend this opinion by discussing the points.

The judgment is affirmed.