Opinion filed January 12, 2023



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00105-CV
_____

## KAY BROOKE-WILLBANKS, Appellant

## V.

## FLATLAND MINERAL FUND, LP; FLATLAND SIDECAR, LLC; AND EXPEDITION ROYALTY COMPANY, LLC, Appellees

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 53258-A**

## O P I N I O N

In this appeal we must determine (1) whose royalty interests must bear the burden for two previously reserved nonparticipating royalty interests (NPRIs) and (2) what constitutes a "net mineral acre." After the parties filed cross-motions for summary judgment, the trial court denied the motion filed by Appellant, Kay Brooke-Willbanks, and granted the motion filed by Appellees Flatland Mineral Fund, LP and Flatland Sidecar, LLC (collectively Flatland), effectively determining that Appellant, as grantor, alone was burdened by the previously reserved NPRIs.

On appeal, Appellant challenges the trial court's rulings in two issues contending that: (1) the trial court erred when it denied Appellant's motion for summary judgment because the outstanding NPRIs burden the parties' royalty interests proportionately; and (2) the trial court erred when it granted Flatland's motion for summary judgment on Appellant's claims for reformation or rescission of the deed because genuine issues of material fact exist. For the reasons discussed below, we reverse and render in part, and we reverse and remand in part.

## I.  *Factual Background*

In 2014, a 45/100 mineral interest was conveyed to Appellant in the south half of a section of land located in Martin and Howard counties. Appellant's 45/100 mineral interest in the 320 acres is the equivalent of an undivided 144-acre mineral interest.

In 2016, Appellant conveyed to Flatland a portion of her interest in the mineral estate. The conveyance in the deed reads in relevant part:

> [Appellant grants to Flatland] **an undivided Seventy-Two (72) Net Mineral Acres** in and to all of the oil, gas and other minerals and mineral royalty, including overriding royalty, in, whether producing or non-producing, and under and that may be produced from the following described lands in Martin and Howard Counties, Texas, to-wit:
>
> **S/2 of Section 17, Block 34, Township 1 North, T & P Survey, A-527, Howard and Martin Counties, Texas.**
>
> . . . .
>
> This conveyance is made subject to the terms of any valid and subsisting oil, gas and other mineral lease or leases on said land; and Grantor's [sic] have granted, transferred, assigned and conveyed, and by these presents do grant, transfer, assign and convey unto the Grantee, their heirs, successors and assigns, the above stated interest of Grantor's interest in and to the rights, rentals, royalties and other benefits accruing or to accrue under said lease or leases from the above described land.

2

. . . .

Notwithstanding, it is the specific intent of this instrument to convey to Grantee the right to receive all bonuses, rents, royalties, production payments, or monies of any nature, including those in suspense, accrued in the past or in the future, associated with the undivided interest herein conveyed.

No reservations from or exceptions to the conveyance were included in the deed. However, at the time of the conveyance, there existed an active oil and gas lease covering the south half of the section of land that contained the 320 acres. Furthermore, this active lease provided for a 3/16th royalty for all oil and gas produced on the land.

In early 2018, Flatland sold a portion of its mineral interest to Appellee Expedition Royalty Company, LLC—an undivided 36 net mineral acres. During the parties' negotiations, Flatland became aware of two NPRIs that burdened the royalty interest associated with the south half of the section of the land. These NPRIs arose from conveyances made in the 1940s by the parties' predecessors-in-interest.

In April 2018, Flatland requested that Appellant execute a Correction Mineral and Royalty Deed to clarify the interests owned by Flatland and Appellant. Appellant did not execute the correction deed.

Appellant later filed suit against Flatland to quiet title and for a declaratory judgment claiming that (1) the intention of the parties from the four corners of the deed was to convey one-half of whatever interest that Appellant owned; (2) the deed only conveyed to Flatland one-half of Appellant's interest—72 net mineral acres of the 144 net mineral acres that she owned; (3) the parties specifically intended that Flatland would receive only the royalty associated with the undivided 72 net mineral acres, and nothing more; (4) any valid NPRIs would burden the entire mineral estate because it necessarily limits the royalty interests attached to the underlying mineral interests; and (5) any purported claim from Flatland constitutes an improper cloud

on Appellant's title, which is invalid and of no force and effect. Alternatively, Appellant also asserted that the deed was subject to rescission or reformation.

In response, Flatland filed counterclaims against Appellant and asserted claims for breach of contract, conversion, unjust enrichment, and money had and received. Expedition intervened in the suit, asserting its interest in the undivided 36 acres of the mineral estate that it had purchased from Flatland and its standing as a necessary party to Appellant's alternative cause of action for rescission.

After the parties filed competing traditional and no-evidence motions for summary judgment, the trial court granted summary judgment in favor of Flatland and Expedition and dismissed all causes of action that Appellant had asserted against them. Flatland later nonsuited its counterclaims against Appellant for breach of contract and conversion, and the trial court granted summary judgment in favor of Flatland on Flatland's claim for money had and received. This appeal followed.

## II. *Analysis*

In Appellant's first issue, she contends that the trial court erred when it denied her motion for summary judgment because the outstanding NPRIs in the chain of title burdened her mineral interest and Flatland's mineral interest proportionately.[1] Specifically, Appellant asserts that the mineral interest conveyance was made subject to (1) an active lease on the land and (2) her interest in the royalties under that lease. We agree.

---

[1]Appellant and Flatland disagree as to the proper cause of action (declaratory judgment or trespass-to-try-title) that we should rely on to construe the deed. Where, as here, the interest that the deed conveyed is nonpossessory, the proper cause of action to assert is for declaratory judgment. *See Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003) (the lessor in an oil and gas lease conveys to the lessee title to the minerals as a fee simple determinable and retains a possibility of reverter and a royalty interest, both of which are nonpossessory); *see also T–Vestco Litt–Vada v. Lu–Cal One Oil Co.*, 651 S.W.2d 284, 289–90 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (plaintiffs may not maintain an action in trespass to try title when they have no present right of possession but only a reversionary right) (citing *Law v. Stanolind Oil & Gas Co.*, 209 S.W.2d 381, 384–85 (Tex. App.—Galveston 1948, writ ref'd n.r.e.)); *Shell Petroleum Corp. v. State*, 86 S.W.2d 245, 249 (Tex. App.—Austin 1935, no writ) (a nonpossessory royalty interest is insufficient to maintain an action for trespass to try title).

We review a summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Rahlek, Ltd. v. Wells*, 587 S.W.3d 57, 64 (Tex. App.—Eastland 2019, pet. denied). In doing so, we consider all of the evidence in the light most favorable to the nonmovant, indulge all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that no genuine issues of material fact exists and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When we review cross-motions for summary judgment, we consider both motions and render the judgment the trial court should have rendered. *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 116 (Tex. 2018); *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001); *Comm'rs Ct. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

In reviewing whether the trial court erred when it denied Appellant's motion and granted Flatland's motion, we must determine whether the trial court's interpretation of the deed is flawed. Because the trial court ruled in favor of Flatland, we infer that the trial court interpreted the conveyance as placing the burden of the previously reserved NPRIs on Appellant alone. *See Knott*, 128 S.W.3d at 215 ("When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.").

In our interpretation of the deed, we first address whether the deed is ambiguous. *See ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). "An appellate court may only construe a deed as a matter of law if it is unambiguous." *Hughes v. CJM Res., LP*, 640 S.W.3d 623, 627 (Tex. App.—Eastland 2022, no pet.) (citing *ConocoPhillips Co.*, 547 S.W.3d at 874). If a deed is drafted in such a way that it can be given a certain or definite legal meaning, the deed is not ambiguous. *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*,

554 S.W.3d 586, 601 (Tex. 2018). Here, neither party contends that the deed is ambiguous, nor do we find it to be ambiguous.

"The construction of an unambiguous deed is a question of law for the court." *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017); *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). When construing an unambiguous deed, our primary responsibility is to ascertain the intent of the parties solely from all of the language within the four corners of the deed. *Wenske*, 521 S.W.3d at 794; *Luckel*, 819 S.W.2d at 461. What controls is not the intent that the parties meant but failed to express; rather, it is the intent that the parties did, in fact, express. *Luckel*, 819 S.W.2d at 462. Additionally, we must strive to "harmonize all parts of the deed" and construe it "to give effect to all of its provisions." *Id.* When different provisions of a deed appear to be contradictory or inconsistent, we must attempt to construe the instrument so that no provision is rendered meaningless. *Id.*; *Rahlek, Ltd.*, 587 S.W.3d at 64.

Generally, deeds are construed to confer upon the grantee the greatest estate that the terms of the instrument will allow. *Lott v. Lott*, 370 S.W.2d 463, 465 (Tex. 1963); *Rahlek, Ltd.*, 587 S.W.3d at 64. In other words, a deed will pass whatever interest that the grantor possesses in the land, unless the deed contains language that expresses a clear intention to grant a lesser estate. *Rahlek, Ltd.*, 587 S.W.3d at 64; *see also Sharp v. Fowler*, 252 S.W.2d 153, 154 (Tex. 1952). Thus, unless the deed contains reservations or exceptions that reduce the amount of the estate conveyed, a warranty deed will pass all of the estate owned by the grantor at the time the conveyance is consummated. *Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (Tex. 1956); *Rahlek, Ltd.*, 587 S.W.3d at 65.

We begin our analysis by determining the parties' intent as expressed in the deed. *Wenske*, 521 S.W.3d at 794. Generally, if we can ascertain their intent, our analysis ends. *Id.* In this case, whether the parties intended that the previously reserved NPRIs would burden Appellant only or the parties proportionately is central

6

to our analysis. As such, in order to comprehend the burdens passed by the deed, the mineral interest conveyed by the deed must be ascertained.

Here, the deed's granting clause recites that Appellant conveys "an undivided Seventy-Two (72) Net Mineral Acres" in the land to Flatland. The parties disagree as to the meaning of the term "*net mineral acres*" and the interests that it passes. This term, although infrequently discussed in oil and gas jurisprudence, is commonly used to define a mineral interest that is conveyed by a deed or a lease. In the context of a deed, it has been said that "one net mineral acre is typically considered to equal the fee-simple mineral estate in one gross acre of land." *See* Clifton A. Squibb, *III. Title Defect Provisions and Issues*, State Bar of Tex., TXCLE Oil, Gas and Min. Title Examination Course 13-III, 2020 WL 3978553 (2020). Further, the term "net mineral acre" is often used in mineral deeds when uncertainty exists concerning the total mineral acres that the grantor is able to convey. Ethan M. Wood, *III. Some Scenarios Where On-The-Ground Surveys Matter*, State Bar of Tex., TXCLE Oil, Gas and Min. Title Examination Course 6-III, 2022 WL 3162027 (2022) ("many conveyances convey a fixed number of 'net mineral acres' such that the numerator of the fractional interest will stay constant while the denominator changes upon resurvey"). Because we find the above commentary persuasive, we hold that the term "net mineral acre" as used in the deed's granting clause is subject to only one reasonable and plain meaning—an undivided fee simple mineral interest in the 72 acres that Appellant conveyed to Flatland, including the right to receive royalty payments therefrom.

However, our analysis does not end here. To ascertain the intent of the parties, we must harmonize all parts of the deed and give effect to all of its provisions. *See Luckel*, 819 S.W.2d at 462. The deed in this case contains a "subject to" clause that further clarifies the intent of the parties. "The words 'subject to,' [when] used in their ordinary sense, mean subordinate to, subservient to or limited by." *Wenske*,

521 S.W.3d at 796 (quoting *Kokernot v. Caldwell*, 231 S.W.2d 528, 531 (Tex. App.—Dallas 1950, writ ref'd)). "Subject to" clauses limit the estate and associated rights that are granted and warranted to a party. *Averyt v. Grande, Inc.*, 717 S.W.2d 891, 894 (Tex. 1986). As discussed below, the "subject to" clause in the deed clarifies the intent of the parties in two respects: (1) the type of property interest conveyed and (2) the amount of royalty interest conveyed.

First, the specific type of property interest conveyed in the mineral estate—whether it be fee simple or some lesser estate—is clarified by the deed's "subject to" clause. Here, the "subject to" clause states that "[t]his conveyance is made *subject to* the terms of any valid and subsisting oil, gas and other mineral lease or leases on said land" (emphasis added). Importantly, the parties concede that an active oil and gas lease existed on the land at the time of the conveyance. Because an oil and gas lease conveys to the lessee title to the minerals as a fee simple determinable interest, Appellant, as grantor, only possessed a possibility of reverter and a royalty interest at the time the conveyance was consummated. *See Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003); *Richmond v. Wells*, 395 S.W.3d 262, 266–67 (Tex. App.—Eastland 2012, no pet.). As such, we conclude that the parties intended that Flatland would (1) take its interest in the land subject to the outstanding, existing oil and gas lease on the land and (2) receive the same interests that Appellant possessed—a future reversionary interest and a royalty interest in the 72 acres that Appellant had conveyed to it.

Second, the "subject to" clause also clarifies the amount of royalty interest conveyed by the deed. As a general rule, "the conveyance of an interest in the minerals in place carries with it by operation of law the right to a corresponding interest in the royalty." *Wenske*, 521 S.W.3d at 797 (citing *Woods v. Sims*, 273 S.W.2d 617, 621 (Tex. 1954)); *see Benge v. Scharbauer*, 259 S.W.2d 166, 169 (Tex. 1953). Under this principle, "a severed fraction of the royalty interest—like [an]

NPRI—generally would burden the entire mineral estate because it necessarily limits the royalty interests attached to the underlying mineral interests." *Wenske*, 521 S.W.3d at 797. This principle informs our interpretation of the deed at issue; however, it does not compel an outcome in this case. *See id.* "Parties are free to contract for whatever division of the interests suits them." *Id.* "Their intent, as expressed in the deed, controls." *Id.* Therefore, if parties to a deed desire for their agreement to operate differently from this basic principle of mineral conveyance, they should "plainly and in a formal way express that intention." *Id.* (quoting *Benge*, 259 S.W.2d at 169). We see no such expressed intent, plain or not, in the deed before us. In fact, the deed's language clearly expresses an intent to follow the principles stated above.

In this case, the "subject to" clause clarifies that the intent of the parties was for Appellant, as grantor, to "grant, transfer, assign and convey unto Grantee . . . *the above stated interest of Grantor's interest in and to the . . . royalties . . .* accruing or to accrue under said lease or leases" (emphasis added). To harmonize the deed's provisions, this clause necessarily defines and limits the grant made in the first clause of the deed. It limits Flatland's interest, as grantee, in the royalties to the same interest which Appellant possessed at the time of conveyance—the royalties associated with the 72 acres that Appellant conveyed to Flatland. Thus, there is no intent expressed by the parties to convey anything other than the proportional royalty interest that is associated with the 72 acres conveyed by Appellant. In other words, by their use of the term "net mineral acres" in the deed the parties expressed an intent to convey a fixed amount of net royalty acres. *See Squibb*, 2020 WL 3978553 (2020) (discussing the distinction between "net mineral acres" and "net royalty acres.").

Flatland argues that, because the deed does not specifically identify the previously reserved NPRIs, and because Appellant owned sufficient title to convey 72 acres of interest in the royalties, it does not share the burden of the previously

9

reserved NPRIs. Flatland cites to *Selman v. Bristow* to support this contention. 402 S.W.2d 520, 524 (Tex. App.—Tyler), *writ ref'd n.r.e.*, 406 S.W.2d 896 (Tex. 1966). In *Selman*, the grantor conveyed all of the surface and 3/4 of the mineral estate and reserved the remaining 1/4 interest in the minerals. *Id.* at 523. While the grantor owned 100% of the minerals in place at the time of the conveyance, his royalty interest was subject to a previously reserved royalty interest that he failed to include in the deed's granting clause. *Id.* The court found that nothing in the deed restricted the granting clause from conveying the 3/4 of the mineral estate that it purported to convey. *Id.* Thus, the court held that it was necessary to carve out the disputed 1/8 royalty interest that had been previously reserved from the 1/4 mineral interest reserved by the grantor. *Id.* at 524.

The court in *Selman* followed the *Duhig* estoppel principle in reaching its holding. *Id.* at 524; *Bristow v. Selman*, 406 S.W.2d 896 (Tex. 1966); *see also Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878, 880 (Tex. 1940). However, the holding in *Duhig* is narrow in scope and confined to the specific facts of that case. *Trial v. Dragon*, 593 S.W.3d 313, 318 (Tex. 2019) ("*Duhig* applies the doctrine of estoppel by deed to a very distinct fact pattern, and its holding is narrow and confined to those specific facts."). In light of these circumstances, we decline to apply the holding in *Duhig* to the deed now before us.

Moreover, *Selman* is distinguishable because, in this case, we are not interpreting a reservation of royalties for the grantor that was purportedly made by the deed. As we have said, the deed contains no reservation or exception. Rather, the language in the deed that expresses an intent to convey a lesser estate is the "subject to" clause. The limiting power of a "subject to" clause is inherent in the use of the words "subject to." *See Wenske*, 521 S.W.3d at 796. Here, the grant made by the deed specifically made the conveyance *subject to* "the above stated interest of Grantor's interest in and to the . . . royalties . . . accruing or to accrue under said

lease." Further, the parties do not dispute that Appellant's 144-acre interest was burdened by the previously reserved NPRIs prior to the deed's conveyance. Thus, the "subject to" clause clearly and explicitly expresses the intent that the 72-acre mineral interest that Flatland acquired would be burdened by the previously reserved NPRIs to the same extent that Appellant was burdened prior to this conveyance.

The deed also contains a specific intent clause that recites "it is the specific intent of this instrument to convey to Grantee the right to receive all . . . royalties, . . . including those in suspense, accrued in the past or in the future, *associated with the undivided interest herein conveyed*" (emphasis added). This specific intent clause further supports our conclusion that the intent of the parties, as captured in the deed, was for Flatland to take the royalty interest associated with the undivided 72 acres as it existed at the time of the conveyance. As we have mentioned above, the royalty interest in the south half of the section of land was burdened by the previously reserved NPRIs at the time of the conveyance. Thus, Flatland's interest in the 72-acre mineral interest that it received from Appellant is burdened by the previously reserved NPRIs.

The parties' intent, "when ascertained, prevails over arbitrary rules." *Luckel*, 819 S.W.2d at 462 (quoting *Harris v. Windsor*, 294 S.W.2d 798, 800 (Tex. 1956)). We have ascertained the parties' intent here. As such, and based on our interpretation of the deed's provisions, we reject Flatland's argument that the absence of an exception clause requires a holding that the grantee is not burdened by previous reservations that are readily identifiable in the chain of title. *See Wenske*, 521 S.W.3d at 794 (rejecting mechanical rules of construction, such as giving priority to certain clauses over others, or requiring the use of so-called "magic words").

We hold that the deed conveyed to Flatland an undivided 72 net mineral acres, which included a proportional interest in the royalties that was burdened by the

previously reserved NPRIs attributable to those 72 acres. The outstanding NPRIs burdened the parties' royalty interests proportionately. Because the trial court concluded otherwise, it erred when it denied Appellant's motion for summary judgment and granted Flatland's motion. Accordingly, we sustain Appellant's first issue on appeal. In light of our disposition of Appellant's first issue, we need not address Appellant's second issue. *See* TEX. R. APP. P. 47.1.

### III. *This Court's Ruling*

We reverse the trial court's judgment, in part, and render judgment for Appellant that the outstanding NPRIs in the chain of title burdened Appellant's mineral interest and Flatland's mineral interest proportionately. Because of our holding, and because Flatland prevailed on its claim for money had and received in the trial court below, we agree with Appellant that we must also reverse that portion of the trial court's judgment awarding damages to Flatland for money had and received. Accordingly, we also reverse the trial court's judgment insofar as it awarded damages to Flatland for money had and received, and we remand this cause to the trial court for reconsideration of the damages asserted by Flatland on its claim for money had and received.


W. STACY TROTTER
JUSTICE


January 12, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.